## Cincinnati, New Orleans & Texas Pacific Railway Company v. Swan's Admx.

(Decided June 18, 1912.)

### Appeal from Boyle Circuit Court.

Railroads—When Boss of Crew Cannot Complain That Notice of Approach of Train Was Not Given.—A boss in charge of a gang of men in the service of a railroad company working along the railroad track whose duty was to know the time of trains and keep the track clear, cannot complain that notice of the approach of a train was not given, or that it was running too fast, when he was standing on the track and was struck by it, running on its usual time, as it was his duty to watch for the train and keep everything out of its way and he should not have put himself in the way of it.

CHAS. H. RODES, GEORGE E. STONE, NELSON D. RODES and JOHN GALVIN for appellant.

ROBT. HARDING, E. V. PURYEAR and JOHN W. RAWLINGS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Mat Swan was in the service of the railroad company as the foreman of a gang of men who were putting in two water columns near the railroad tracks at Williamstown. The north column was about 100 yeards from the south column, each being by the side of the main track. East of the main track was a passing track, and in addition to this was what is known as the storage track. The passing track was about a mile long, and was used for the passing of trains; that is, a train would go on this track to allow another train to pass it. A fast train, known as the "Carolina Special," was due at Williamstown at 8:22 a. m. It did not stop there, but passed at that point the morning accommodation going south. On

the morning in question the accommodation train arrived from the north on time, and took the passing track. It pulled down on the passing track to the depot, and there let off its passengers. It then started on the passing track, and pulled down to the southern end of this track. Swan was at the north water column, supervising the work about the time this train pulled in, and after spending some minutes there, went down to the south water column, walking along the main track. When he got to the south water column, he remained standing on the track, looking over into the pit the men were digging for the base of the water column. While he was standing there, the accommodation train was pulling southward on the passing track. Just south of him both tracks curved a little to the east. The wind was blowing, so as to cause the smoke from the accommodation train to blow down on the main track. While the accommodation train was pulling down on the passing track, the Carolina Special came rapidly around the curve, and before Swan was aware of its approach, or the engineer had perceived him, it was so close to him that it struck him before he could get off the track. He was instantly killed, and this action was brought by his personal representative against the railroad company to recover for his death. The proof for the plaintiff on the trial showed that the Carolina Special was running very rapidly, say 40 miles an hour, and it tended to show that no signal of its coming was given. The proof for the defendant was that it was running about 25 miles an hour, and that it gave the usual signals by blowing the whistle as it approached. It was a part of Swan's duty as foreman of the gang to keep the tracks clear for passing trains. In the work they were doing they used wheel barrows or timber from time to time across the track, and it was a part of his duty to know the time of trains, and to see that the tracks were clear. He had charge of the work, and it was incumbent upon him to so conduct the work as not to endanger the trains. To this end, he was furnished a time card. The Carolina Special was due at 8:22, and it arrived at 8:25. On these facts the court instructed the jury as follows:

"No. 1.—You are instructed that it was the duty of those in charge of the defendant company's train to give reasonable and timely notice, by ringing its bell and sounding its engine whistle, in coming to the place where the deceased, Mat Swan, was located at the time he was

killed, and to have said train under such control as would enable the operators of it to stop in case of necessity, and if you believe from the evidence that the defendants negligently failed to give timely and reasonable notice of the approach of said train to said Swan or negligently ran same at such a rate of speed as not to have same under control, and because of one or the other of these failures of duty the deceased did not know of the approach of said train in time to avoid being struck by same, and was thereby killed, and he was at the time on said track at a time and place where he was required by the defendant company to be, discharging the duties required of him, and in doing so was in the exercise of ordinary care for his own safety, you will find for the plaintiff; and if you do not so believe, you will find for the defendants.

"No. 2.—You are instructed that if the jury shall believe from the evidence that the deceased, Swan, had notice of the time of the approach of defendant's train No. 14, then it was his duty to keep a lookout for said train and exercise ordinary care in his movements, so as to keep in a place of safety, and if the jury shall further believe from the evidence that deceased, having notice of the time of the approach of same, and that he failed to keep a lookout for the approach of said train, or failed to keep himself in a place of safety, then they shall find for defendants.

"No. 3.—Although you may believe from the evidence that the deceased was killed by the negligence of the defendants, yet if you further believe from the evidence that the deceased was himself guilty of negligence, and his said negligence, if any, contributed to his death, and but for said negligence on his part he would not have been killed, then you will find for the defendants.

"No. 3½.—Although the jury may believe from the evidence that the defendants were guilty of negligence as set out in instruction No. 1, yet if the jury further believe from the evidence that the deceased, Mat Swan, voluntarily placed himself so near the rail on the main track of the defendant company's road as to be struck by a train in passing over same, when he had a safe place in which he could have stood and inspected the south pit spoken of in the evidence, and but for such act upon Swan's part he would not have been killed, the law is for the defendants and the jury will so find."

The jury found for the plaintiff in the sum of $5,500. The court entered judgment on the verdict and the defendant appeals.

It is insisted for the railroad company that the court erred in refusing to instruct the jury peremptorily to find for it; that the instructions given are erroneous, and that the verdict is not supported by the evidence.

In Coleman's Admr. v. Pittsburg, &c., Ry. Co., 23 R., 401, a watchman at a street crossing in Louisville, while standing near the track, was struck and killed by a passing train, and the suit was brought to recover for his death on the ground that proper notice of the approach of the train was not given. The circuit court, at the conclusion of the evidence, instructed the jury peremptorily to find for the defendant, and on appeal the judgment was affirmed on the ground that it was Coleman's duty to watch for the trains, and keep out of their way, and that it was not incumbent upon the railroad company to employ another servant to watch out for his safety. The court said:

"A servant of a steam railroad company who is charged with an important and particular duty to his master and to the public will not be allowed to profit by any neglect of the duty. Not only the fairest principles of justice between men would prevent it, but also public policy forbids that a premium should be placed by the law upon the neglect of such a duty, and such would be done did the courts allow a recovery by the servant from the master for the former's injury, which could not have resulted save from his neglect of such duty. Those in charge of the train had the right to presume that decedent was in the discharge of his duty at the point of the crossing and that, therefore, he was noting the train's approach, and doing all that was necessary to relieve the master from liability on that account. The master was under no obligation to give the flagman special notice of that which it was his primary duty to observe."

This case was followed and approved in Conniff v. Louisville, Etc., Railroad Co., 124 Ky., 763; Wickham v. L. & N. R. R. Co.. 135 Ky., 288, and L. & N. R. R. Co. v. Hunt, 142 Ky., 778.

In Cincinnati, Etc., Railroad Co. v. Harrod, 132 Ky., 445, Harrod was a brakeman in the service of the company at Georgetown, and was engaged in switching

some cars on a side track. After he had made a coupling, he stepped back upon the main track to signal the engineer of his own train, and just as he did so, he was struck by the fast train that killed Swan running on time. It was charged there, as here, that his death was due to the negligence of the company in running the train too fast, and in failing to give notice of its approach; but both of these contentions were rejected, and it was held that a peremptory instruction should have been given to the jury to find for the defendant. The court said:

"Those in charge of No. 4 knew that it was the superior train, having the right of way, and that trains of lower grade on the line must keep aware of its movements in their vicinity, and keep out of its way. They had a right to rely on other trainmen observing their duty in these respects, and to run their own trains accordingly. That is practical railroading, and the only way, it seems to us, that large systems, using many trains and fast trains, may maintain their service. If observed, it is as safe, too, as the nature of that business seems now to admit of. It cannot be made safer by lessening the care of those whose primary duty it is to observe the care. If Harrod had been a section workman in the yards at Georgetown, his case would not have been less than it is. Sectionmen work in railroad yards, as well as in the country, at all times, and may reasonably be expected there at any time. They must be aware of the time of the running of the trains over the track on which they are at work. Even though those in charge of a fast train knew they were working at that point, or might reasonably be expected to be working there, they also knew it was their duty to maintain a clear track for that train, and to themselves keep out of its way, as they well could."

We do not see that this case can be distinguished from those cited. The proof for the defendant showed that Swan knew the time of the Carolina Special, but we do not regard this proof as material. The train ran every day, and he had been there for some days in charge of this gang of men. It was his duty to know the time of the train, and if he did not know it, this neglect of duty on his part cannot put him in a better position than he would be if he had known it. The train came practically on time. It was his duty to see that the tracks were clear at that time, and, knowing this, he placed himself

on the track and was looking over into the pit while the rapidly moving train was approaching him from the south. He had no right to place himself in any such position, he could have stood on either side of the pit, and his so placing himself was the proximate cause of the injury; there is nothing in the evidence warranting the conclusion that the danger to him might have been avoided by proper care on the part of the trainmen after his peril was discovered. He stood in just the same position as the watchman in Coleman's case. It was his duty to protect the traveling public. The lives of the passengers upon the Carolina Special depended upon the vigilance of himself and the other servants along the line discharging similar duties, and it is a sound public policy which denies a recovery on behalf of such persons when injured by reason of a neglect of their duties. We, therefore, conclude that the court should have instructed the jury peremptorily to find for the defendant. This conclusion makes it unnecessary for us to consider the other questions raised in the case.

Judgment reversed and cause remanded for further proceedings consistent herewith.

Judge Nunn dissents.