# Cincinnati, New Orleans & Texas Pacific Railway Company v. Swann's Administratrix.

(Decided October 22, 1914.)

## Appeal from Boyle Circuit Court.

1. Railroads—Federal Employers' Liability Act—Negligence Necessary to Recover Damages Under.—The Federal statute known as the Federal Employers' Liability Act, does not define the character or degree of negligence necessary to a recovery; therefore, when an action is brought under the Federal Act in our State courts to recover damages for injuries sustained on account of the negligence of another employe which do not involve defects in cars, machinery or other equipment, the rules of law prevailing in this State must be looked to in determining whether the acts or omissions complained of amounted to negligence. The negligence that would authorize a recovery under one would authorize it under the other, and if the evidence is not sufficient to sustain it under one, neither will it be sufficient to sustain it under the other.

2. Railroads—Care Required Towards Employe, Whose Duty it Was to Look Out for Trains, is Killed by Passing Train—Facts Stated.—Where it was the duty of the foreman in charge of a crew of men to keep advised of the time of the arrival of trains so that he might have the track clear and protect his men from injury, the company did not owe him the duty of warning or lookout or reduction of speed, but only the duty of exercising ordinary care to save him after his peril was discovered.

3. Railroads—Duty to Employes on and About Tracks.—When an employe working on or about railroad tracks is not charged with the duty of keeping a lookout for trains, the company, in the operation of its trains, owes him a higher degree of duty than it does an employe whose duty it is to keep a lookout for trains.

4. Railroads—Rules of Company—Application of.—The rules of a railroad company regulating the movements of its trains are only made and intended for the benefit and safety of those who are entitled to rely on them and who come within the class meant to be protected by the particular rules. Therefore, rules requiring trainmen to keep a lookout and give warning of the approach of the train and reduce its speed have no application to and do not protect an employe whose duty it is to keep a lookout for trains and keep the track clear and protect the men under his charge from injury by passing trains.

CHARLES H. RODES, NELSON D. RODES and JOHN GALVIN for appellant.

O'REAR & WILLIAMS, ROBERT HARDING, EMMETT PURYEAR and JOHN W. RAWLINGS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

M. B. Swann, while engaged as an employe of the appellant railway company, was killed by one of its trains, and in this suit by his administratrix to recover damages for his death, there was a verdict and judgment against the railway company, followed by this appeal

On a former appeal a judgment against the railway company was reversed, with direction to direct a verdict in its favor if the case was retried. The opinion on the former appeal may be found in 149 Ky., 141. On a return of the case the former suit, which was brought under the State law, was dismissed and this suit instituted under the Federal legislation known as the Employers' Liability Act.

At the time Swann came to his death the railway company was engaged in interstate commerce, and he was employed by it in such commerce. Therefore, no question is raised as to the right to maintain this action under the Federal act.

It also seems to be conceded by counsel that the evidence in this trial was in every substantial respect the same as the evidence on the first trial, and as the facts are very fully stated in the opinion referred to, it is unnecessary that we should re-state them in detail here. In order, however, that this opinion may show the facts as well as the law that we consider applicable to this case, we will briefly set them out.

The railway company was putting in two water columns near the railroad tracks at Williamstown Station. One of these was known as the North column and the other as the South column, and the work on these columns had been in progress about ten days when Swann was killed. On the day in question Swann was the acting foreman of the crew of men engaged in putting in these water columns. At Williamstown the railway company has a passing track, and shortly before 8:25 in the morning a south bound accommodation train went in on this passing track for the purpose of letting a fast north bound train, known as the Carolina Special, go through on the main track. This train was due at Williamstown at 8.23 a. m., and on this morning arrived there at 8:25 a. m. When it passed the South water column the engine struck and instantly killed Swann, who was standing on or near the end of the

ties on the main track looking into the pit near the track, which had been excavated for the water column. He had only been in this position a few seconds when he was struck by the engine.

The evidence shows, virtually without contradiction, that Swann could have looked into this pit as he was doing when struck, from certainly two and probably three other places, and that if he had chosen any of these other places the engine or train could not have struck him. Why he selected this dangerous place in preference to the safe place does not appear. Probably he did so because it was more convenient to stand on the end of the ties than to walk around and look into the pit from the other sides of it.

Williamstown was not a regular stopping place for this Carolina Special, and it never stopped there except to receive orders, and on this morning was going by the station at a speed of probably 30 or 40 miles an hour.

The perilous position of Swann was not discovered by either the fireman or engineer until the engine was within a few feet of him, and it was then too late to take any steps to prevent the engine from striking him. The reason he was not sooner discovered was that the train rounded a sharp curve in the track just before coming to the point where Swann was standing.

It was the duty of Swann, as foreman of this work, to keep advised of the time of trains, so that he might warn the men under him of their approach, and also to keep the track free from tools and material used by the men in the progress of the work, and he was required to and did keep a watch as well as a time-card. In short, one of his duties was to keep a look-out for the approach of trains, so that the track would be safe and the men under his charge protected.

There is also evidence that a day or so before his death the attention of Swann had been sharply called, as the result of a controversy between some of the men, to the time of the arrival of this Carolina Special, but we do not attach importance to this circumstance, as it was his duty to know, and he did know, the time when it was due, and on this morning it was only two minutes behind its schedule time.

It was also shown in evidence for the administratrix that a public highway crossed the tracks of the railway company a short distance south of the point where

Swann was struck; and that it was the duty of the engineer before reaching this highway crossing to give the statutory signals, is of course not denied, but whether he did give them or not is in dispute.

Rules of the company were also introduced showing that it was the duty of the persons in charge of this train to have it under control, keep the bell ringing, and proceed at a much slower rate of speed than the train was going at places where the conditions were similar to those existing at Williamstown.

The acts of negligence charged in the petition and sustained by some evidence, are as stated by counsel for appellee: (a) that the train was being run at a reckless and dangerous rate of speed; (b) that the engineer and those in charge of the train negligently failed to keep a look-out for Swann and others engaged in putting in the water column beside the track; (c) that no warning was given by the engineer of the train's approach.

The answer, besides traversing the averments of the petition, affirmatively set up contributory negligence on the part of Swann, as well as the assumption of risk. But we shall not enter into a discussion of these defenses except in so far as they may throw light on the question whether the employes of the railway company in charge of the train were, as a matter of law, negligent in the particulars named, or any of them.

In other words, we shall devote what we have to say to a consideration of the question whether the railway company owed to Swann the duty of having its train under control, keeping a look-out, and giving warning of its approach, or the duty of doing any one of these acts. If the railway company was not guilty of negligence in one of these respects, or if it did not owe Swann the duty of observing the measure of care indicated, there can be no recovery in behalf of his estate.

The Federal Statute, known as the Employers' Liability Act, expressly provides that in cases like this a cause of action arises "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment." So that unless the death of Swann resulted in whole or in part from the negligence of the employes in charge of the train that struck him, there can be no recovery;

and it is equally true that these employes could not have been guilty of negligence towards him unless they failed to discharge some duty owing to him: Long v. Southern Ry. Co., 155 Ky., 286; Helm v. C., N. O. & T. P. Ry. Co., 156 Ky., 240.

It will be noticed that the Federal act under which this action was brought does not undertake to define the character or degree of negligence necessary to a recovery. This being so, we think that when an action is brought under the Federal act in our State courts to recover damages for injuries suffered on account of the negligence of another employe the rules of law prevailing in this State must be looked to in determining whether the acts or omissions complained of amount to negligence. There is no difference in cases like this in the character or degree of negligence necessary to sustain a verdict and judgment, whether the action be brought under the Federal or State law. The negligence that would authorize a recovery under one would authorize it under the other, and if the evidence is not sufficient to sustain a recovery under one, neither will it be sufficient to sustain it under the other. This statement is of course confined to cases presenting facts similar to those disclosed in this record which do involve defects in cars, engines, machinery or other equipment, and also leaves out of consideration entirely the question of contributory negligence and the rules of law relating thereto. Therefore, if the railway company, or its employes, under the rules of law prevailing in this State when the cause of action arose, were not guilty of actionable negligence, there can be no recovery in this case.

Having this view of the matter, we might rest a reversal of the judgment upon the ground that the decision in this case should be controlled by the opinion on the former appeal. In that opinion it was said, on the same facts here shown, that the court should have instructed the jury peremptorily to find for the defendant, and this conclusion, as we conceive, was put upon the ground that the railway company did not commit towards Swann any breach of duty, and hence there was no negligence on its part.

The opinion, however, does not distinctly state whether the finding of the court was rested on the failure of the evidence to show negligence on the part of the company or on proof of the contributory negligence of Swann; and, therefore, it is insisted by counsel for ap-

pellee that the court on the other appeal reached the conclusion indicated because it believed Swann was guilty of such contributory negligence as would defeat a recovery under the State law.

If this construction of the opinion is correct, the former decision does not control in this case, because the effect of contributory negligence is not the same in actions brought under the Federal act as it is in actions brought under the State law. The contributory negligence that would defeat a recovery under the State law might reduce the recovery under the Federal act, but would not necessarily defeat it. Nashville & Chattanooga Ry. Co. v. Henry, 158 Ky., 88.

In view of this situation, and as the new action was brought under the Federal act, in an effort to avoid the bar of contributory negligence, we will again examine into the question of the negligence of the company for the purpose of ascertaining what breach of duty, if any, it was guilty of, and in doing this will put entirely aside the contributory negligence of Swann. Looking at the case from this standpoint, it becomes important to keep distinctly in mind the position that Swann occupied and the duties he was required to perform.

He was the foreman in charge of this work. As such foreman it was his duty to keep advised of the time of the arrival of trains, so that he might have the track clear of tools and materials used in the work, and protect his men from injury. He was required to and did keep a watch and had a time-table, or, at any rate, there was a time-table furnished for his use. He knew the schedule time of the arrival of this Carolina Special, and further knew that Williamstown was not a station at which this train stopped. In addition to this, his duties did not require that he should stand or be in the place he was when struck. In place of selecting this position of danger, he could have selected a place of safety.

The question now is, did the railway company, or its employes in charge of this train, on the facts as stated, owe him the duty of reducing the speed of the train, or of having it under control, or of giving warning of its approach, or of keeping a look-out? We think not. It has been so written in several cases.

In Coleman v. Pittsburg Ry. Co., 139 Ky., 559, Coleman, who was employed as a crossing flagman, was killed by one of the railway company's trains. In an action by

his administrator against the railway company to recover damages, this court said:

"There is shown to have been ample room between the tracks for decedent to have performed his services in safety to himself. It was his duty to watch for trains and to keep himself out of unnecessary danger. It is difficult to imagine how decedent could possibly have been struck by the train unless he was neglecting one of these duties, for if he failed to note the approach of the train it was a neglect of his duty, and such a one that had it resulted in the injury to a stranger, would unquestionably have made his master, the appellee, liable. Or, did he know of the train's approach and from his experience and the nature of his employment knew the danger of standing too close to the track and yet did so, the calamity of his death would be due solely to his own carelessness. A servant of a steam railroad company who is charged with an important and particular duty to his master and to the public will not be allowed to profit by any neglect of that duty. Not only the fairest principles of justice between men would prevent it, but also public policy forbids that a premium should be placed by the law upon the neglect of such a duty, and such would be done did the courts allow a recovery by the servant from the master for the former's injury which could not have resulted save from his neglect of such duty. Those in charge of the train had the right to presume that decedent was in the discharge of his duty at the point of the crossing and that, therefore, he was noting the train's approach and doing all that was necessary to relieve the master from liability on that account. The master was under no obligation to give the flagman special notice of that which it was already his duty to know, or to provide a brakeman or other servant for the rear of the car to warn him to take notice of that which it was his primary duty to observe. From a careful inspection of this record we are unable to see wherein any negligence from appellee toward the decedent is proven. Therefore, the court should have given to the jury the peremptory instruction asked for at the close of the plaintiff's testimony."

In Conniff v. Louisville, Henderson & St. Louis Ry. Co., 124 Ky., 763, which presented a similar state of facts, the rule announced in the Coleman case was adopted and followed.

In Wickham v. L. & N. R. R. Co., 135 Ky., 288, Wickham was employed by the railroad company as a watchman, his duties being to protect the property of the company and to see that school children and other trespassers were kept off the track and not injured by passing trains. He was struck by a train and killed, and in an action by his administrator to recover damages for his death, the court said there could be no recovery, putting its decision upon the ground that as it was the duty of Wickham to know the time of the arrival of trains and to protect the track, the company did not owe him the duty of reducing the speed of the train, although it was shown that there was a customary use by the public of the railroad company's tracks at that point, and it was insisted that as the accident happened in an incorporated town, the railroad company should have run its trains with reference to persons on its tracks.

In L. & N. R. R. Co. v. Hunt, 142 Ky., 778, a recovery was also denied upon the ground that it was the duty of Hunt, who was killed, to keep a look-out for trains, and, therefore, the only duty the company owed him was to exercise ordinary care to prevent injury to him after his peril was discovered. To the same effect is Ellis v. L., H. & St. L. Ry. Co., 155 Ky., 745.

In Blankenship v. Norfolk & Western Ry. Co., 147 Ky., 260, Blankenship, who was a track walker, was killed by a passing train, and in an action by his administrator against the railway company to recover damages for his death, the court held that there could be no recovery, saying: "His work as a track walker necessarily placed Blankenship upon the tracks of the road, and it goes without argument that the duty was imposed upon him to take such reasonable care of himself in the performance of his duties as would prevent him from being injured by a passing train."

In C., N. O. & T. P. Ry. Co. v. Harrod, 132 Ky., 445, Harrod, who was a brakeman in the employ of the Southern Ry. Co., was killed on tracks in the yard at Georgetown that were used by the Southern Ry. Co. and the C., N. O. & T. P. Ry. Co. In an action brought to recover damages for his death, the petition charged that the employes in charge of the train that killed him were guilty of negligence in failing to give warning of the approach of the train and in running it at a high and dangerous rate of speed. In holding that there could be no

recovery, the court, among other things, said as peculiarly applicable to the facts of this case:

"If Harrod had been a section workman in the yards at Georgetown, his case would not have been less than it is. Sectionmen work in railroad yards, as well as in the country, at all times, and may reasonably be expected there at any time. They must be aware of the time of the running of the trains over the track on which they are at work. Even though those in charge of a fast train knew they were working at that point, or might reasonably be expected to be working there, they also knew it was their duty to maintain a clear track for that train, and to themselves to keep out of its way, as they well could. Would the speed of the train, even though negligence to the passengers or licensees, have been negligence as to them? We think not, and it would make no difference whether they were in the yards at Georgetown, at Kincaid, or in the country where there was no station; for it must always be borne in mind that negligence toward a person is the antithesis of a duty owing to that person.

"But the facts of this case carry us one step further: Decedent actually knew that train No. 4, a fast through passenger train, was due to pass his point at 6:49. He obtained the knowledge for the very purpose of keeping out of its way. When it came along at the very moment it was due to come, it were as if he had at that moment notice of the fact. Why do trains whistle and ring their bells? Obviously to notify people, whom they owe a duty to, of their approach. If, then, the person to be noticed already knows the fact, why again notify him? * * *

"But those who know that the fast train is due and coming in can not rely upon its duty towards others ignorant of the fact, so as to charge its operatives with negligence in running it at high rate of speed, for with their knowledge, by keeping off the track, the speed of the train would be harmless to them. But the facts here carry us still another step: Decedent unnecessarily went from a place of perfect safety to one of great hazard to serve his own convenience alone, and thereby put himself in a position where no amount of care in operating train No. 4 would have saved him. They could not see him till he suddenly stepped out on the track immediately in front of their engine. Whether running 20 or 50 miles an hour then, the train could not have been

stopped in time to avoid striking him. Between the tracks was a safe place in which to do his work. On the west side it was safer, though not quite so convenient. To step into the middle of the main track, at the moment a fast, heavy train was due, and which he knew was due, without looking, is such an act of negligence that its quality is not debatable. Nor can it be ignored in law. Being established without question, its legal effect is a pure question of law. From whatever point the facts are viewed, we are unable to say that appellant failed in any duty it owed the decedent.''

In opposition to the authority of these cases, we are referred by counsel for appellee to Barber v. C., N. O. & T. P. Ry. Co., 14 Ky. L. R., 869; L. & N. R. R. v. Lowe, 118 Ky., 260; Cason's Admr. v. Covington & Cincinnati Bridge Co., 29 Ky. L. R., 352; Thompson on Negligence, Vol. 2, section 1756.

In the Barber case, Barber, while engaged in getting out ballast for the railway company at a point on its line of road, was struck by one of its passing trains and killed. There being evidence tending to show that the employes in charge of the train that struck him failed to give warning of the approach of the train and ran it at a high rate of speed, it was held that the case should have gone to the jury, as under the circumstances of that case it owed him the duty of warning him of the approach of the train.

In the Lowe case, Lowe, who was an assistant inspector of trains at Lebanon Junction, was struck and injured by an engine backing down on the track. The company, in defense of the action, said that it owed no duty to Lowe to keep a look-out or give him notice of the movement of the engine; but this court took a different view of the matter and held that there could be a recovery. To the same effect is Carson's Admr. v. Covington & Cincinnati Bridge Co., 29 Ky. Law Rep., 352.

In Thompson on Negligence, volume 2, section 1756, it is said: ''The position of track-walker, track-repairers and especially that of car-repairers is materially different, in respect of the question of their contributory negligence, from that of ordinary travelers at highway crossings, and still more so from that of trespassers. They are not only lawfully upon the railway track and hence in a position of danger, but they are there under contract with the railway company for the performance of certain duties which require, to a greater or less ex-

tent, the exercise of their faculties, in the performance of which their faculties may become so absorbed as not to enable them to take the same care for their safety which might reasonably be expected from travelers at crossings and from intruders upon railway tracks or in railway yards. These considerations impose upon the railway company, with peculiar force, the duty of giving them warning upon the approach of a train or engine, by the use of audible signals, and by checking or stopping the train or engine in time to avoid injuring them, if the engineer perceives that, for any reason, they are not paying attention to those signals. As a general rule, it is not contributory negligence, as a matter of law, for a person so employed not to be on a constant look-out for approaching trains. This must be so if we are paying the slightest attention to the position of a man who is fastening a fish-plate, or who is oiling or repairing the wheel of a car in a passenger train which has stopped temporarily at a station for that purpose. Such a person can not keep his eyes on his work and, at the same time, keep them strained in both directions for approaching trains, or for ocular signals. Such persons are, therefore, not blameworthy, as a matter of law, merely because they become so engrossed in their work as not to heed the approach of a train, or because they rely upon the reasonable expectation that the railway company will, through its trainmen, perform the duty of giving them the necessary and proper signals."

It seems to us apparent that there is no conflict in these two lines of authorities, the plain distinction between them being that in one line recovery was denied because the injured party was under a duty to keep a look-out for trains so that he might protect the track and prevent injury to other persons. In the other line of authorities the injured employe was not charged with this duty and a recovery was allowed. And it can easily be understood why the law imposes upon railroad companies a different rule of care in these different classes of cases. The reasons for the distinction are fully stated in the authorities referred to.

To the employe like Swann, whose duty it is to look out for trains and protect the track, the company does not owe any of the duties assigned as negligence in this case. It only owes him the duty of exercising ordinary care to protect him from danger after his peril is discovered, and there is no claim in this case that the col-

lision with Swann could have been prevented after his danger was discovered. What duties railroad companies owe to other classes of employes, engaged on or about the track, we need not determine, as such an inquiry would not be pertinent to the case in hand.

Some rules of the company were introduced respecting the movement of trains at meeting points and at stations where conditions were similar to those that existed at Williamstown, and it is said that Swann had the right to rely on the observance of these rules, and their violation by the company was negligence as to him.

The rules promulgated by the company are of course intended for the guidance as well as the protection of its employes. But obviously rules regulating the movements of trains are only made and intended for the benefit and safety of those who are entitled to rely on them and who come within the class meant to be protected by the particular rules, and Swann was not in that class. It was his business not only to take care of himself but to take care of the men and property under his charge, and the company and its employes in other branches of the service had the right to assume that he would perform this duty and were relieved of the necessity of exercising towards him the degree of care other employes not charged with like duties might have the right to demand.

When the railroad company employs a man to keep a look-out for trains at a particular place, and charges him with the duty of knowing the time of their arrival, it should not be subjected to liability for failing to observe towards him the same degree of care employes not charged with these duties have the right to expect. Men in charge of trains, especially in the engine, have a multitude of duties to perform in the interest of and for the protection of the public, and they ought not to be distracted from the performance of these duties by being required to regulate the speed of the train and give notice and keep a look-out for other employes whose business it is to keep out of the way of trains.

Upon the facts shown by the record, we think the lower court should have directed a verdict in favor of the railway company, and if there is a re-trial and the facts are substantially the same as they were on the last trial, the trial court should give such a direction.

Wherefore, the judgment is reversed for proceedings in conformity with this opinion.