## McCalley's Administrator v. Chesapeake & Ohio Railway Company.

(Decided March 8, 1916.)

### Appeal from Lewis Circuit Court.

Railroads—Lookout Duty.—A servant of a railroad company, whose duties are not to lookout for and to know of the time of the movements of the trains, but whose duties are to engage in labors which take him upon the tracks of the railroad, is entitled to warnings of the approach of the trains, and a lookout duty from the ones operating the trains.

ALLAN D. COLE, S. J. PUGH and U. C. THOROUGHMAN for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

Opinion of the Court by Judge Hurt—Reversing.

Hazel D. McCalley, who was a man of about fifty years of age, and had been engaged for fifteen or twenty years of his life in the service of the appellee, Chesapeake & Ohio Railway Company, was, in June, 1913, in the employment of the appellee, and his duties were to remove the ashes and cinders from the railroad track near a pumping station, at Garrison, in Lewis County. At this pumping station there were two tracks, and a water tank was situated upon each of the tracks, at which the trains passing over the road stopped to obtain water, and at the same places, the furnaces of the engines would be cleaned out and the ashes and cinders dropped upon the track. The duties of decedent were to keep the ashes and cinders shoveled from the track, because, if they were allowed to accumulate they would affect the wires by which the signal block system was operated upon the road, and would cause the blocks to assume a position which indicated that a passing train should stop. One of the tracks at this point was used by the trains going east and the other was used by the trains going west. Near this point there was a private crossing of the railroad tracks. A freight train had just passed, going toward the east and was standing upon the track a short distance away. A considerable quantity of ashes and cinders had been dropped upon the west bound track by some passing train, a quantity, which was sufficient to require from fifteen to twenty-five minutes to be removed with a shovel. The decedent observed this and took his shovel and went upon the west bound track, and when last seen by any one, which was less than ten minutes before he was killed, he was engaged in shoveling off the cinders from the track, with his face turned toward the west. At that time an accommodation train approached the pumping station from the east and going west, at the rate of from forty to fifty miles an hour and struck the decedent from the rear, knocking him about sixty-six feet and instantly causing his death. When picked up, his neck was broken, his back was bruised and very soon became discolored, one of his legs was cut nearly off from the back side, and the ankle of the other leg was cut through to the bone from the rear. The train was stopped about one thousand feet from the point where it came in contact with the decedent. No signal was given of the approach

of the train to the place where decedent was at work, except that on the east side of a bridge nearby, upon the track, the train signalled for the station at Garrison, which was situated between a quarter and one-half mile west of the pumping station. The track over which the train approached was substantially straight for a considerable distance before arriving at the point where it struck and killed the decedent, and one in the engine could see decedent at his work, in shoveling the ashes, for about two thousand feet before arriving at the point where he was. The death of decedent occurred between three and four o'clock in the afternoon.

The administrator of the decedent brought this suit under the Federal Employers' Liability Act to recover the damages to his estate, alleged to have arisen from his death, and relied in his petition upon a general allegation of negligence on the part of the employes of the railroad, which he alleged was the cause of decedent's death. The appellee, by answer, traversed the negligence alleged in the petition, and as a defense in addition thereto plead that the decedent was, also, negligent and his negligence was the cause of his death.

At the conclusion of the evidence offered and heard for the appellant, the appellee moved the court to peremptorily instruct the jury to find a verdict for it. The court sustained this motion and under the direction of the court the jury returned a verdict for the appellee and a judgment was rendered dismissing the petition.

The appellant's motion and grounds for a new trial being overruled, he seeks a reversal of the judgment upon the ground that the court was in error in sustaining the motion for a direct verdict, for appellee.

It is conceded that the appellant can maintain the action under the provisions of the Federal Employers' Liability Act, if it can be maintained at all, and, also, that if appellee owed the decedent the duty of taking precautions for his safety, as warning him by proper signals of the approach of the train, and maintaining an adequate lookout for him, that the evidence was sufficient to take the case to the jury.

The evidence fails to disclose, that the ones operating the train saw the peril of decedent in time, by the exercise of ordinary care, to have averted the injury to him, but it tends to prove, that if the engineer had kept a lookout, and used ordinary care to have seen him,

that his presence upon the track would have been discovered in time to have prevented injury to him, by warning him of the approach of the train by blasts upon the whistle, or by checking the speed of the train, or, if need had been, to have stopped the train. The decedent was not a trespasser nor a mere licensee, but was upon the track in the performance of the very duty for which he was employed by the appellee, and which duty could not be performed without his going upon the track and remaining there while shoveling off the cinders and ashes. The pile of ashes and cinders, according to the evidence, was sufficient in quantity to have engaged him for from fifteen to twenty-five minutes, in its removal. When seen less than ten minutes before his death, he was shoveling off the ashes and cinders, with his back toward the direction from which the train came, which caused his death. After his death, it was found that before he was struck by the train, he had removed all but a small quantity of the cinders and ashes. The wounds upon the body show that he was taken in the rear by the train, and the fact that his body was hurled over sixty feet and against a fence would indicate that he was struck with considerable violence. From these facts it can, also, be inferred, that he was intently engaged at his work and had no knowledge of the approach of the train. All of the witnesses, except one, testify that no signal of any kind, of the approach of the train, was given. The bell was not rung, nor any sound of the whistle given, nor was the speed of the train lessened. One witness testifies that a signal for the station at Garrison was given, but at a considerable distance before the arrival at the point where decedent was at work. The train approached decedent down a slight incline, and the fact that he was intent at his work, with his face in the opposite direction, and the near proximity of the freight train upon the other track, with its attendant noises, probably caused the failure of decedent to have knowledge of the approach of the train which killed him, and the further fact that the train was about thirty minutes behind its schedule time may have been a cause of his failure to note its approach.

The question for determination is: Did the appellee owe decedent the duty of maintaining a lookout for him, or of warning him of the train's approach? If it owed to him no such duty, it could not be an act of negligence

upon its part to fail to observe any precautions for his safety, for negligence necessarily depends upon a corresponding duty.

It is well settled that the general rule is, that where ever the presence of persons upon railroad tracks, who have a right to be upon the tracks, is to be anticipated, the ones operating engines and trains upon the track owe such persons the duty to give warning of the approach of the trains, and to maintain a lookout for them. It is needless to cite authorities in support of this general rule. It is, however, insisted that a servant of a railroad, whose specific duty it is to look out for trains and to care for the track, is not entitled to any precautionary measures for his safety, and the only duty the railroad company owes to him is to exercise ordinary care to avoid injuring him after he is discovered in a position of peril. In support of this view many authorities are cited by appellee, none of which seem to have a direct bearing upon the principles applicable to this case.

In Coleman v. Pittsburg, C. & O. Ry. Co., 63 S. W., 39, a flagman at a crossing, whose duty it was to observe the approach of all trains and to protect persons at the crossing from injury, was not entitled to any warnings of the approach of a train, nor the maintenance of a lookout for him. To the same effect is the holding in Conniff v. L., H. & St. L. Ry. Co., 124 Ky., 766; Wickham v. L. & N. R. R. Co., 135 Ky., 288; L. & N. R. R. Co. v. Hunt's Admr., 142 Ky., 778; Ellis v. L., H. & St. L. Ry. Co., 155 Ky., 745. The principle upon which these cases rest is, that there is no obligation upon the railroad company to give warnings of the approach of trains or to keep a lookout from its trains for one who has been employed by it for the purpose, and whose specific duty it is to know of the approach of trains, and to give warning of it to others.

In C. & O. Ry. Co. v. Lang's Admr., 135 Ky., 76; 121 S. W., 993; and Blankenship's Admr. v. Norfolk & Western Ry. Co., 148 Ky., 260, it was held that a servant of a railroad company employed as a track walker was not entitled to warnings of the approach of trains, nor to a lookout duty. The duty of the track walker is to be upon the track during the entire working day, and the train men can not know upon what portion of the track he may be, and to give him warning of the ap-

proach of the train, or to lookout for him, is both unreasonable and impracticable.

In. C., N. O. & T. P. Ry. Co. v. Swan's Admr., 149 Ky., 141; and the same, 160 Ky., 458, Swan was the foreman of a gang of men, who were engaged in putting in two water columns beside the tracks, and Swan was furnished with a time card of the arrival of the trains, and of keeping the track clear of tools, etc. He was struck by a passing train and killed, while standing on the track. The court held that the ones operating the train did not owe him any warning of the approach of the train, nor any lookout duty, because it was his duty to know of the arrival of the trains, so as to protect the track and his own men, the court, in the opinion in 149 Ky., 141, saying:

"When the railroad company employs a man to keep a lookout for trains, at a particular place, and charges him with the duty of knowing the time of their arrival, it should not be subjected to liability for failing to observe towards him the same degree of care which employes not charged with these duties have the right to expect."

It is insisted for appellee that the employment at which the decedent, McCalley, was engaged brings him within the rule stated in the cases, *supra*. With this contention, however, we cannot concur. As was said in Conniff v. L., H. & St. L. Ry. Co., *supra*: "A different rule obtains as to employes working upon the tracks or bridges of a railroad, or engaged in other employment that does not impose upon them the duty of looking out for the approach of trains." Thompson on Negligence, Vol. 2, Sec. 1839, lays down the doctrine, that where persons are lawfully at work upon the tracks of a railroad, they can not be expected to pursue their labors and at the same time maintain a constant lookout for an approaching train; they are passive and not a source of danger, while the ones handling the train are in control of an instrument of danger and mischief, and that railway companies, under these circumstances, must give them reasonable danger signals to arouse their attention and enable them to get out of the way. In Barber v. C., N. O. & T. P. Ry. Co., 14 R., 869, Barber was engaged with others in the service of the railroad company in quarrying ballast, near the railroad track, and had to wheel the rock across the track to the other side, and

for that purpose placed planks across the track. No signal of the approach of the train was given and Barber ran to remove the planks to keep the train from being derailed, and in doing this he was killed. This court held that he was entitled to the customary warning of the approach of the train. In I. C. R. R. Co. v. Mahan, 17 R., 1200, Mahan was a telegraph operator for the company, and was run over by a backing train in the railroad yards at Arlington. In L. & N. R. R. Co. v. Potts, 92 Ky., 30, the deceased was in the employment of the railroad company, and his duties were to enter in a book the numbers of the cars on the side tracks and point out to the engineer the ones he was to take up. He was standing on the tracks when he was killed by some detached cars, which backed against him. In L. & N. R. R. Co. v. Lowe, 118 Ky., 264, the appellee was an inspector of cars for the railroad company in its yard at Lebanon Junction, and was run over by an engine and tender and injured. In the three last named cases it was held that the injured servants were entitled to warnings of the approach of the trains, which injured or caused their deaths, and were entitled to a lookout duty from the ones operating the trains. The holdings in these cases, were, however, made to rest to some extent upon the ground, that being in railroad yards, and the number of employes therein engaged, made it necessary to give warnings and to keep a lookout. In Carson v. Covington R. R. Co., 93 S. W., 19, a servant engaged in working upon a bridge of the company was held to be entitled to a warning of the approach of the trains, and a lookout duty by the ones operating the trains. From the foregoing cases it seems to be the rule, that where the special duty of a servant of a railroad company is to observe the approach of the trains and their movements, the company does not owe him a lookout duty, nor a duty to give him warning of the approach of the train, but where it is not the duty of such servant to observe and know of the movements of the trains, then he is entitled to the warnings of approach and a lookout, and especially so where his duties are of such a nature as to require him to be engaged at labors, which are calculated to distract his attention from observing the movements of the trains. In the instant case, the duties of the decedent did not require him to know of the arrival and departure of the trains,

and it does not appear that he had such knowledge. His duties consisted in removing the ashes and cinders from the track, so as to prevent them from affecting the working of the block system of signals. This he could do at any time a train was not upon the track, which he could observe without any knowledge of when another train would arrive or depart. While it was the duty of decedent to exercise ordinary care to keep out of the way of the trains and for his own safety, he had been engaged at this work for a year and a half, and the appellee, knowing of his employment by it, and the place of his work was obliged to have anticipated his presence upon the track, and owed him the duty of taking such precautionary measures for his safety as it owes to other persons who have a right to go upon the tracks, and whose presence there must be anticipated.

For the reasons indicated, the court was in error in peremptorily directing a verdict for appellee, and the judgment is reversed and the cause remanded for proceedings consistent with this opinion.