# Hearell, Administrator, etc. v. Illinois Central Railroad Company, et al.

(Decided June 20, 1919.)

## Appeal from Crittenden Circuit Court.

1. Damages—Injuries to the Person—Negligence—Evidence.—Where it is sought to recover damages for negligence or wrongful acts there must be some evidence to show that deceased lost his life through the negligence of defendant and this evidence must be sufficient to charge the defendant with a breach of duty and a recovery can not be had on mere surmises or speculation as to how the injury complained of happened.

2. Negligence—Actionable Negligence—Presumptions—There is no presumption that defendant was guilty of actionable negligence if the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability.

3. Negligence—Presumption of Negligence.—There is no more a presumption of negligence against the defendant than there is of contributory negligence on the part of decedent, and it is incumbent upon decedent to prove negligence on the part of defendant or its employes, or facts from which such negligence can reasonably be inferred.

4. Negligence—Presumption of Negligence—There must be some tangible evidence from which it can be readily said how an accident was brought about, but where the evidence is so unsatisfactory as to require the court or jury to resort to surmises or speculation as to how the injury occurred there will be no presumption of negligence.

5. Death—Assignment of Soldier to Watch Trestle—Presumptions.— Where a soldier assigned to the duty of watching a trestle was not compelled to be on the company's tracks, except perhaps occasionally, and when last seen alive was in a sitting position about three feet from the track there will be no presumption that his death was due to negligence on the part of the defendant, in the absence of other evidence.

6. Railroads—Assignment of Person to Watch Trestle—Warning.— A person assigned to the duty of guarding a trestle was not entitled to any warning of the approach of trains on defendant's tracks, it being his duty to guard the trestle, and had he been performing the duties assigned him it would have been impossible for him to have failed to either see or hear the approaching train.

7. Master and Servant—Warning of Approach of Trains—Lookout. —Where employes of the company or others, with the permission of the company, are engaged in work requiring their presence on or about the tracks and in the performance of which their faculties may become so absorbed as not to enable them to keep

a lookout for their own safety, the company must give them warning of the approach of its train.

A. C. MOORE and C. S. NUNN for appellant.

JNO. C. GATES, JNO. W. BLUE, R. V. FLETCHER and TRA-BUE, DOOLAN, HELM & HELM for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Earnest Hearell, as administrator of the estate of Winstell Hearell, instituted this action against appellees, defendants below, to recover damages for the death of his intestate, a private in the national guard, and one of a squad of six assigned to guard a trestle about 2½ miles north of Wickliffe, at what is known as Minor's Slough. The track, for practically the entire distance from Wickliffe to this point, is on a fill from 15 to 30 feet high. On the night of May 19, 1917, decedent had the watch from 6 o'clock to midnight; a rifle and a lantern formed part of his equipment. Corp. Lanier, a member of the squad, was talking to him about 7 o'clock. At this time Hearell was lying down by the track and about 9 o'clock the same witness saw Hearell sitting on a piece of timber extending about five or six feet from the track, and on the east side thereof. He describes this timber as being one of the end sills of the trestle. An hour and a half later, to-wit, about 10:30 p. m., Wayland Smith, another member of the squad, returning to the camp from Wickliffe, found Hearell's dead body lying near a water barrel on the trestle with his head about three inches from the rail, his right hand in his sweater, his left leg straight out; the right leg was propped up; the whole right side of his skull crushed. When Smith reached a switch 250 or 300 yards from the south end of the trestle, he heard one of defendant's trains known as the "Seminole limited," approaching from the south, and it gave a signal for what is known as Fillmore's Crossing, some-thing less than a mile from the trestle. He stopped at the switch to allow this train to pass; he says the train gave no signals other than the one for the crossing, the engine was equipped with a large, good light. Smith testifies that it was about a three or four minutes' walk from the switch to the point where he found Hearell's body.

There are two trestles at this point, one owned by defendant and used by north bound trains of defendant and

the Mobile & Ohio R. Co., the other is owned by the latter company and is used by the southbound trains of both railroads.

At the conclusion of the evidence offered in behalf of plaintiff the court sustained a motion for a directed verdict and we are asked to reverse the judgment entered pursuant thereto—this we cannot do.

Where it is sought to recover damages for negligence or wrongful acts there must be some evidence to show that deceased lost his life through the negligence of the defendant, and this evidence must be sufficient to charge the defendant with a breach of duty and recovery can not be had on mere surmises or speculation as to how the injury complained of happened, nor will it be presumed that the defendant was guilty of actionable negligence if the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability. Hughes v. C. N. O. & T. P. Ry. Co., 91 Ky. 526; Louisville Gas Co. v. Kaufman-Straus Co., 105 Ky. 131; Early's Admr. v. L. H. & St. L. Ry., 115 Ky. 13; Hurt v. L. & N. R. R. Co., 116 Ky. 545; Stuart's Admr. v. N. C. & St. L. Ry. Co., 146 Ky. 127; Caldwell's Admr. v. C. & O. R. R. Co., et al., 155 Ky. 609; Weidekamp's Admr. v. L. & N. R. R. Co., 159 Ky. 674; Bell's Admx. v. C. & O. Ry. Co., 161 Ky. 466; Rogers, Admr. v. Kosmos Portland Cement Co., 163 Ky. 84; Woodburn v. U. L. H. & P. Co., 164 Ky. 29; Sutton's Admx. v. L. & N. R. R. Co., 168 Ky. 81; I. C. R. R. Co. v. Pierce's Admx., 175 Ky. 488; Siemer v. C. & O. Ry. Co., 180 Ky 111.

In the Hughes case, *supra,* perhaps the most oft quoted case on this subject, the court said:

"One suing to recover damages for injury arising from another's neglect must offer some testimony conducing to show that it was so occasioned. Negligence can not be presumed in a case like this one. The presumption is the other way. It can not be found without evidence. The complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. Mere proof of the injury, with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may

theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and under such circumstances he has offered no evidence tending to show it. He has merely presented two or more states of case upon which one may theorize as to the cause of the accident."

And the court, with approval, quotes from Cotton v. Wood, 8 Com. Bench. N. S. 568 (cited in Thompson on Negligence, 1st Ed., p. 364) as follows:

"I wish merely to add, that there is another rule of the law of evidence, which is of the first importance, and is fully established in all the courts, viz.: That, where the evidence is equally consistent with either view—with the existence or non-existence of negligence—it is not competent to the judge to leave the matter to the jury. The party who affirms negligence has altogether failed to establish it. That is a rule which ought never to be lost sight of."

It would be impossible for any jury or court to fix the cause of Hearell's death. Since there is no more a presumption of negligence against defendant than there is a presumption of contributory negligence on the part of decedent, and it being incumbent upon plaintiff to prove negligence on the part of defendant or those operating its train, or facts from which such negligence could reasonably be inferred, the trial court properly sustained the motion for a directed verdict.

Courts are not authorized and juries should not be permitted to indulge in speculation or to guess as to the cause of an accident. There must be some tangible evidence from which it can be fairly said the accident was brought about, and where the evidence is so unsatisfactory as to require the court or jury to resort to surmises or speculation as to how the injury occurred, there will be no presumption of negligence.

We find in Bell's Admx. v. C. & O. Ry. Co., *supra,* that decedent was a section laborer in the service of the appellee and on the night he was killed he was assigned to the duty of watching for slips and slides along the hillside adjoining the company's tracks. He went on duty at 4 o'clock in the afternoon, and his body was found the next morning. It was sought to hold the company liable because of its neglect in not equipping one of its engines with a burning headlight, and also negligence in

the operation of the train; but the court said that no negligence having been shown upon the part of appellee there was nothing for the jury to pass upon and the trial judge properly directed a verdict for the defendant.

I. C. R. Co. v. Pierce's Admx., *supra,* also presents facts similar to those involved. Decedent was a substitute flagman employed by the appellant and worked at irregular intervals and when not employed by the company he solicited insurance. He had applied for a pass to go to Marion, Ky., and on the morning he was killed he went to a yard office of the company, about a mile and a half from Princeton, to see if his pass had arrived, and while crossing the tracks, near the yard office, he was struck by one of the appellant's passenger trains and killed. It was alleged that the place of the accident was very much frequented by the company's employes and others; that decedent was there on business and by invitation of the company and his death was caused by the negligent operation of the company's trains. The court said that at the time of the accident decedent was not an employe of the company, nor was he a trespasser, but, viewed in the light most favorable to appellee, decedent was, on the occasion of his death, upon the premises of the company as a member of the public, a bare licensee, and the company owed him the duty of lookout and signals only if the tracks at that place were habitually used by a sufficient number of persons to make the company anticipate their presence there. It was shown that some twelve or fifteen employes, members of freight crews, were twice daily upon the tracks connecting the yard office and Princeton, but to these the company owed no duty of lookout in the operation of passenger trains, as it was a part of their duty to keep out of the way and give a clear track to passenger trains, and in so far as the evidence in that case goes, decedent was the only person who as a licensee had any permission to use or did use the company's tracks at or near this place.

Such is the case here, taking it from the standpoint most favorable to the appellant. About this time soldiers had been assigned to the duty of guarding certain bridges and trestles in the state; this duty required only one man at a time to be on guard. The use of the trestle was denied to all except employes of the company. It is not shown that in performing this duty it was necessary for

the guards to walk on the railroad tracks, nor were they compelled to keep continually in motion. It was permissible for them to sit down, while on duty, and it appears from the evidence that decedent was in a recumbent position when Lanier saw him at 7 o'clock; at 9 o'clock he was sitting down; as to whether he changed his position between the latter hour and the time of the accident is not disclosed by the record, but his body was found two or three feet from the point where he was last seen alive.

As stated in the brief of appellant's counsel, these guards were not required to patrol any special distance or stand or sit in any particular position; they were properly performing their duties whether walking, standing or sitting, just so the trestle was in view.

It is insisted we ought not to presume that decedent fell asleep, because the penalty for sleeping while on guard duty is death. We indulge in no such presumption or speculation, and yet it would seem that had decedent been in the due performance of his duty he could not have been injured by the train. How could he see a person, as his duty required, and yet not be able to see or hear this train of seven or eight coaches, one of the heaviest and fastest on the road, and the engine equipped with a strong headlight. In the words of the Bard of Avon, "Care keeps his watch in every old man's eye, and where care lodges, sleep will never lie."

McCalley's Admr. v. C. & O. Ry. Co., 169 Ky. 47, is illustrative of a line of cases holding that where employes of the company, or others with the permission of the company, are engaged in work requiring their presence on or about the tracks, and in the performance of which their faculties may become so absorbed as not to enable them to keep a lookout for their own safety, the company must give them warning of the approach of its trains. One so occupied cannot keep his eyes on his work and at the same time be looking for trains in both directions. In the above case decedent was required to keep ashes and cinders shoveled from the track near a pumping station where the furnaces of the engines were cleaned.

To the same effect see Barbour v. C. N. O. & T. P. Ry. Co., 14 R. 869; Cason's Admr. v. Covington & C. Br. Co., 29 R. 352; C. N. O. & T. P. Co. Ry. Co. v. Winningham's Admr., 156 Ky. 434; C. St. L. & N. O. R. Co., et al. v. Armstrong's Admr., 168 Ky. 104; C. N. O. &

# Hearell, Admr. v. I. C. R. Co.        47

T. P. Ry. Co. v. Smith's Admr., 168 Ky. 185; L. & N. R. R. Co. v. Payne's Admr., 177 Ky. 462.

Hearell's work was not such as to bring him within the class above referred to. He was neither required nor expected to be on the track, except perhaps when an occasional intruder or pedestrian chanced that way. There was nothing so absorbing in his task as would prevent the use of his senses of sight and hearing; on the contrary the very nature of his duties demanded that he be on the alert; the keenest exercise of those two senses was required. His situation was not essentially different from that of the crossing flagman for whose death it was sought to recover damages in Coleman v. P. C. & St. L. Ry. Co., 139 Ky. 559, where, in denying liability on the part of the company, the court said:

"A servant of a steam railroad company who is charged with an important and particular duty to his master and to the public will not be allowed to profit by any neglect of that duty. Not only the fairest principles of justice between men would prevent it, but also public policy forbids that a premium should be placed by the law upon the neglect of such duty, and such would be done did the courts allow a recovery by the servant from the master for the former's injury, which could not have resulted save from his neglect of such duty. Those in charge of the train had the right to presume that decedent was in the discharge of his duty at the point of the crossing and that therefore he was noting the train's approach and doing all that was necessary to relieve the master from liability on that account. The master was under no obligation to give the flagman special notice of that which it was already his duty to know, or to provide a brakeman or other servant for the rear of the car to warn him to take notice of that which was his primary duty to observe. From a careful inspection of this record we are unable to see wherein any negligence from appellee toward the decedent is proven."

This same rule is announced in a number of cases involving flagmen, watchmen, section hands, track walkers, etc. Connif v. L. H. & St. L. Ry. Co., 124 Ky. 776; C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; Wickman v. L. & N. R. R. Co., 135 Ky. 288; L. & N. R. R. Co. v. Hunt's Admr., 142 Ky. 778; Blankenship's Admr. v. N. & W. R. Co., 147 Ky. 260;

C. N. O. & T. P. Ry. Co. v. Swann's Admr., 149 Ky. 141; second appeal 160 Ky. 458; Ellis v. L. H. & St. L. Ry. Co., 155 Ky. 745; L. & N. R. R. Co. v. Elmore's Admr., 180 Ky. 733.  See also Aerkfetz v. Humphries, 145 U. S. 418; Clancy v. St. Louis Transit Co., 192 Mo. 615; Barton v. C. C. & St. L. Ry. Co., 74 Ohio St. 479, 78 N. E. 1117; Soccoroso v. P. & R. Co., 170 Fed. 722; Carlson v. C. S. M. R. Co., 120 Mich. 481, 79 N. W. 688.

Negligence presupposes a duty, and unless there is a failure by omission or acts of omission to discharge such duty there can be no actionable negligence.  Defendant did not owe decedent the duty of signaling the approach of its train.  This being true the lower court did not err in sustaining the motion for a directed verdict.  Wherefore the judgment is affirmed.