### RADCLIFF v. ATLANTIC COAST LINE R. CO.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

No. 1800.

Death ⬳103(2)—Nonsuit held proper in action for death of soldier, struck by train while on sentry duty.

In an action for the death of a national guardsman, found dead near a railroad bridge where he had been doing sentry duty for a week or ten days, and presumably struck by a train, a nonsuit was properly granted, where there was no evidence that trains were operated any different on the night he was killed from their usual and normal operation; the only reasonable inference being that his death was due to his own negligence in failing to keep a sharp lookout as his duties required.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by J. H. Radcliff, as administrator of Gilliam Hall, deceased, against the Atlantic Coast Line Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

E. O. De Pass and Alfred Wallace, Jr., both of Columbia, S. C., for plaintiff in error.

Douglas McKay, of Columbia, S. C. (Barron, McKay, Frierson & McCants, of Columbia, S. C., P. A. Willcox, of Florence, S. C., and Lucian W. McLemore, of Sumter, S. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. In this action of negligence the trial court on plaintiff's proofs ordered a nonsuit, and error is assigned. These facts appear:

Gilliam Hall, plaintiff's intestate, a private in the National Guard of South Carolina, was one of a squad assigned to guard defendant's bridge across the Black river near Kingstree in that state. At midnight of May 7, 1917, he was posted as sentinel about 150 or 200 yards from the end of the span over the river, north of the trestle and on the west side of the track. Four hours later, when the guard was changed, and just where the trestle and embankment came together, he was found dead beside the track, lying on his back, his feet nearly touching the steel rail, his right foot cut and the left side of his head crushed in, his broken rifle underneath him. At the place where he was stationed the space between the ends of the ties and slope of the bank was rather narrow. The night was windy and cool, and he had built a fire, as was allowed, which was still smouldering when his body was discovered. The wind "made a roaring in the tree tops," as one witness says, and there was the noise of the running river.

During the four hours after Hall was posted some six trains passed, in one or the other direction, running fast, according to the testimony, and giving no signals as they came to the bridge. But it does not appear that trains were accustomed to reduce speed in crossing this bridge, or to give any signals as they approached it. In short, there is no proof which shows or suggests that the operation of these trains that night was in any respect different from their usual and normal operation at that point; and with this Hall was quite familiar, for he had been doing sentry duty there for a week or ten days before he met his death.

In our judgment the mere statement of what was shown decides the case without the need of argument. Assuming that Hall was killed by a passing train, as is no doubt the fact, there is nothing to indicate that defendant failed in any duty owed to him, or to warrant the inference of negligence on its part. On the other hand, the conclusion seems irresistible that he must have been the victim of his own carelessness. Stationed there to guard the bridge, directed to "keep a sharp lookout," under obligation to be constantly alert, in full possession of his faculties, with nothing for a long distance either way to obstruct his view of an approaching train, and easily able to place himself in a position of safety when a train passed, it is impossible to believe that he could be run down and killed, unless for some reason he was utterly inattentive to the situation. The only reasonable inference from the testimony imputes his death to his own negligence. It is not necessary to cite authority in support of the ruling below, but reference is made to the case of Hearell v. Ill. Cent. R. R. Co. (Ky.) 213 S. W. 561, which discusses at length a strikingly similar state of facts.

The trial court was clearly right in ordering a nonsuit, and the judgment will be affirmed.