## CONSOLIDATION COAL CO. v. CASTLE.

### No. 10058.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1915.

Allen Prewitt, of Frankfort, Ky. (J. E. Childers, of Pikeville, Ky., and Edward C. O'Rear and Allen Prewitt, both of Frankfort, Ky., on the brief), for appellant.

O. T. Hinton, of Pikeville, Ky. (Francis M. Burke and O. T. Hinton, both of Pikeville, Ky., on the brief), for appellee.

Before HICKS and MARTIN, Circuit Judges, and PICARD, District Judge.

PER CURIAM.

Ballard Castle, an employee of the Chesapeake and Ohio Railway Company, recovered a judgment against the appellant, Consolidation Coal Company, on the verdict of a jury, for $10,000 for personal injuries.

While engaged in cleaning switches in the loading yard, which served a new coal tipple of appellant at one of its mines in Kentucky, Castle was run over by a loaded car set in motion by Mullins, a car dropper in the employ of the coal company. The railway company had no control over the cars from the time they were spotted at the upper end of the yard until they were backed up at the lower end. It was shown in evidence that a rule, or custom, had been established requiring that car droppers should sound a shrill whistle, similar to a police whistle, to give warning of the movement of coal cars throughout the yard of appellant. The vice-president and general-manager of the appellant company testified that the whistles were blown to warn "anything on the track," even "a cat or a dog."

By contract between the coal company and the railway, Castle, at the time of his injury, was unquestionably a licensee or invitee at the place where he was hurt. That spot was some sixty to eighty feet below the tipple. Castle testified that, to do the required work, he was forced to place his back to the tipple and to stoop over in such position that he could not see the approach of cars. As a member of a section crew, he had been engaged for more than two years in the maintenance of tracks and switches in the loading yard; and was

familiar with the custom as to the sounding of a whistle to warn of the movement of dropped cars.

▌▌ There was conflict of testimony as to whether Mullins blew the whistle; but there was substantial evidence from which it could be reasonably inferred that he did not. The jury evidently believed from that evidence that he did not blow the whistle. Mullins set the loaded car in motion in the customary manner, and was at the hand-brake on the rear end of the car as it proceeded down the yard, slowly and noiselessly. A distance of some sixty feet was covered before the car ran over Castle and rolled and dragged him about twenty feet from where he was working. Before he started the car, Mullins knew that Castle was on his job of cleaning switches, had his pick and shovel, and was in his working clothes. Mullins admitted that he knew that Castle was about fifty or sixty feet below the tipple.

The District Judge overruled a motion made by the defendant for a directed verdict and carefully charged the jury that there could be no recovery, unless the defendant was guilty of negligence. The jury was charged that the custom had been proven of the blowing of a whistle, or the giving of some warning of the movement of the cars at the tipple above the place where the injury occurred; and that, if Castle knew of the custom and relied upon it, the duty of the agent of the defendant in charge of the car which struck him was "to blow a whistle or to give reasonable warning" that the car was being started from under the tipple, or was moving and approaching the plaintiff. But the jury was also instructed that the plaintiff owed the duty of exercising ordinary care for his own safety, by keeping at the time and place of his injury such reasonable look-out for the approach of a car, as an ordinarily prudent person would do under the same circumstances; and that, if his failure to use such ordinary care contributed directly to the injury, he could not recover, even though the defendant should be found to have been negligent. The doctrine of contributory negligence was clearly and correctly charged.

The denial of the motion for directed verdict and the charge of the court were in conformity with the law of Kentucky, as declared by its highest court.

In Louisville & N. R. Co. v. Johnson's Adm'x, 161 Ky. 824, 830, 833, 171 S.W. 847, it was held that in railroad yards, where a number of employees are engaged in various kinds of labor, it is the duty of the railroad company, in the movement of its cars and engines, to anticipate the presence of these employees on the tracks and to move its cars and engines at a reasonable rate of speed, keep a look-out, and *give warning of their approach*. It was pointed out by Judge Carroll that there is no reason why the same degree of care should not be exercised in the movement of cars and engines in yards, where numbers of employees are working, as is required in their movement in populous communities, or in towns or cities. See also Norfolk & Western R. Co. v. Short's Adm'r, 171 Ky. 647, 654, 188 S.W. 786; Lexington & E. R. Co. v. Smith's Adm'r, 172 Ky. 117, 119, 188 S.W. 1091. Compare Louisville & Nashville R. Co. v. Lowe, 118 Ky. 260, 273, 274, 80 S.W. 768, 65 L.R.A. 122; McCalley's Adm'r v. Chesapeake & O. R. Co., 169 Ky. 47, 183 S.W. 234, L.R.A.1916F, 551.

▌ The numerous Kentucky cases cited by appellant in which the employer or railway company has been exonerated from liability have been examined, and are found not in conflict with the rule of law applied by the District Judge upon authority of the cases cited in this opinion, from which we find no deviation in the other Kentucky decisions. The true Kentucky rule, deducible from the opinions of its highest court, seems to be that, where either employees or licensees are to be anticipated in railroad yards, a failure to maintain a look-out and to give warning renders the neglectful party liable for such failure, unless the plaintiff was engaged in work of a character making it impracticable that warning be given of the approach of railroad cars.

We find no error in the charge of the court or in the refusal to direct a verdict for the appellant coal company; and there is substantial evidence to support the verdict of the jury.

Accordingly, the judgment of the District Court is affirmed.