6222.   CHARLESTON AND WESTERN CAROLINA RAILWAY COMPANY *v.* SYLVESTER, administrator.

1. In a suit brought under the Federal "employer's liability act," except generally as to violations of Federal statutes for the protection of employees, assumption of risk is an absolute defense, while contributory negligence merely reduces the damages.   Roberts, Injuries to Interstate Employees, § 103; Seaboard Air-Line Ry. *v.* Horton, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475).

2. As construed by the United States Supreme Court, contributory negligence is the omission of the employee to use those precautions for his own safety which ordinary prudence requires.   On the other hand, the same authority holds that an employee assumes the ordinary risks and

hazards of his occupation, and also those defects and risks which are known to him, or which are plainly observable, although due to the master's negligence. Schlemmer v. Buffalo Railroad, 220 U. S. 590 (31 Sup. Ct. 561, 55 L. ed. 596); Horton case, supra.

3. In this case the petition, construed, as it must be, most strongly against the pleader, shows that the injured employee, when he voluntarily stepped upon the track in front of a moving train, in an attempt to cross over a dangerous and defective road-bed to the other side, must have seen and realized the imminent peril to which he was exposing himself, and he assumed the risk. The general demurrer to the petition should have been sustained.

DECIDED SEPTEMBER 11, 1915.

Action for damages; from city court of Richmond county— Judge W. F. Eve. October 12, 1914.

W. K. Miller, for plaintiff in error.   H. C. Roney, contra.

BROYLES, J.   S. L. Sylvester, as administrator of B. T. Yarborough, brought his suit against the Charleston & Western Carolina Railway Company, under the Federal "employer's liability act," to recover damages for the death of Yarborough.   The petition alleged that Yarborough, at the time of his death, was in the employ of the company in the capacity of a switchman.   His duties were to switch freight-trains in the yard of the company, and to assist in transferring loaded freight-cars from the tracks of the company to the tracks of other carriers.   On June 14, 1912, a train of freight-cars, loaded with freight, arrived at the yard, late in the afternoon, from the State of South Carolina.   Several cars of this train were to be cut out and forwarded to other lines of railway, to be transported to their destination, and it became his duty to uncouple the cars so that they could be switched to other tracks in the yard, and thence be forwarded as aforesaid.   It was near the time for the train-crew to stop work, and the cutting out of the cars from the train was done in a rush and a hurry.   As switchman he was required to uncouple and assist in switching the cars attached to the train.   He was required to uncouple a car from it at some distance from the engine, and afterward, in pursuance of his duties, he had to cross the track and change a switch, so as to place the remaining cars attached to the engine on to another track.   He was required to uncouple the car while the train was slowly in motion, so that the car when uncoupled would roll down the track, and the train would then be stopped until the switch was turned.   He gave a signal to the engineer that he had

uncoupled the car, and for the train to be stopped before the switch was reached, and the engineer saw the signal. As the uncoupled car was released from the train he (Yarborough), believing that the train of cars attached to the engine would stop before the switch was reached as it should have been done by the engineer, started across the track to the switch-stand to turn the switch, as his duty required him to do; but, while crossing the track, the train of cars suddenly and unexpectedly came back and caught him upon the track, knocked him down, and terribly mangled his body, so that, from the injuries thus received, he died upon the following morning. The train passed over his body a car or half a car's length beyond the switch before it was stopped. The train was equipped with air-brakes, and the engineer thereon, after receiving the signal of Yarborough to stop the train, should have done so, and could have done so by the exercise of ordinary care and diligence, but carelessly and negligently failed to stop the train, and Yarborough was run over and killed. At the place where Yarborough was run over and killed the road-bed, between the rails of the company, was in a defective condition; the said yard was a comparatively new one, and the road-bed had never been leveled. When the yard was surveyed the surveyor's stobs, driven in the road-bed, had not been removed therefrom, and were impediments in the crossing of the track. During the year 1912 there was a freshet, and the tracks of the company were covered with water for some time, and the road-bed was rough and uneven. Clods of dirt, hardened by the sun, protruded between the rails, of uneven height; and the rails were held in place by anchor bars and fish-plates, thus rendering it unsafe for employees of the company to cross the track while engaged in their work. Owing to this condition of the road-bed, while attempting to cross the track, Yarborough stumbled over the said obstacles in the road-bed which were in his way, fell across the track, and was run over and killed by the train as aforesaid. But for said obstructions he could and would have safely crossed the track and escaped being injured. "The cars to be cut off from said train of cars and to be delivered to other carriers required haste," and the engineer and fireman of said train were hurrying to get off from work. Yarborough, in haste, while crossing the track, was so engaged in his work, and so engrossed in the performance of his duties, that he could not stop to inspect the condi-

tion of the road-bed; and even if he had known of its condition beforehand, so fixed and intent was his mind upon his business that he could not have remembered its then condition. At the time of the homicide he was in the exercise of ordinary care and diligence, was without fault, and could not have avoided the homicide by the exercise of ordinary care and diligence. He was killed wholly by the negligence and carelessness of the company as aforesaid. To this petition the defendant demurred, on the grounds, that no cause of action is set out, and that it is apparent, from the allegations of the petition, that the injury was due to a risk voluntarily assumed by Yarborough. The demurrer was overruled, and the defendant excepted.

In our judgment the petition presented no case of liability against the railway company, under the Federal "employer's liability act." While, under the provisions of that act, contributory negligence on the part of the injured employee does not bar recovery, yet, before he can recover, he must prove that the injuries received were caused in whole or in part by the negligence of the defendant company, its agents or employees; and the mere assertion in the petition that, in several particulars, as pointed out, the defendant company and its agents were negligent will not save it from demurrer, where the petition in its entirety, construed, as it must be, most strongly against the pleader, shows that the injuries sued for were wholly the result of the negligence of the deceased employee whose injuries are the subject-matter of the suit. From the facts as stated in the petition, it is clear to us that the proximate cause of Yarborough's injury and death was his own voluntary and reckless act in attempting to cross the railroad-track in front of the moving train of cars. He himself, from a place of safety on the side of the track, gave the engineer of the train the signal that he had uncoupled one of the cars, and for the engineer to stop the train, and then, before the engineer had brought the train to a stop, he stepped upon the track and attempted to cross over in the opening between the uncoupled car and the remaining cars in the train, all being in motion at the time. This was an extremely hazardous undertaking, and in doing it he voluntarily and unnecessarily exposed himself to imminent peril. The danger was so obvious that any person of ordinary intelligence must have realized it. He must be held to have assumed the risk of such an

obvious danger.   So likewise as to the defects and unsafe condition of the road-bed; there is no allegation that the defendant knew of this condition.   It is not alleged that Yarborough did not know of this unsafe and defective condition of the road-bed, and of the risk and danger of attempting to hastily cross over it in a small opening between moving cars.   The homicide occurred in the day-time, and there is no good reason given why Yarborough ·did not see and know of the dangerous condition of the road-bed.   It is not alleged that Yarborough had ever made any objection or complaint to the defendant or its agents as to the dangerous condition of the road-bed, or that he had ever obtained from the master or his agents an assurance that the defects would be remedied.   It is evident from the petition that this unsafe condition had existed for some time, and that Yarborough had continued working and crossing over this same defective road-bed without giving any notice of the defects to the defendant or its agents.

The Supreme Court of the United States, in Seaboard Air-Line Railway *v.* Horton, 233 U. S. 504 (58 L. ed. 1070), said: "Some employments are necessarily fraught with danger to the workman, —danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into account in fixing the rate of wages, and a workman of mature years is taken to assume risks of this sort whether he is actually aware of them or not.   But risks of another sort, not necessarily incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place to work and suitable and safe appliances for work.   These the employee is not treated as assuming until he becomes aware of the defect or disrepair and the risk arising from it, unless the defect and risk alike are so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them.  .  .   When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the. employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arises out of the master's breach of duty." And further in the same case (p. 1071) it was said:   "But by the common law, with respect to the assumption by the employee of the

risk of injuries attributable to defects due to the employer's negligence, when known and appreciated by the employee, and not made the subject of objection or complaint by him, it is quite immaterial whether the defect existed when the appliance was first placed in his charge or subsequently arose."

Under all the circumstances of the instant case it must be held that the danger of attempting to cross over in a small opening between moving cars this defective and unsafe road-bed was obvious to Yarborough, and that he assumed the risk, and that the plaintiff, therefore, can not recover. The general demurrer to the petition should have been sustained. See *Louisville & Nashville R. Co.* v. *Kemp*, 140 *Ga.* 657, 659 (79 S. E. 558); New York Railroad v. Pontillo, 211 Fed. 331 (128 C. C. A. 573); Seaboard Air-Line Ry. v. Horton, cited in first headnote supra; Iron Mountain Railroad v. McWhirter, 229 U. S. 283 (33 Sup. Ct. 858, 57 L. ed. 1179); *Nix* v. *Southern Ry. Co.*, 4 *Ga. App.* 331 (61 S. E. 292); *C. & W. C. Ry. Co.* v. *Robinson*, 11 *Ga. App.* 492 (75 S. E. 820); *C. & W. C. Ry. Co.* v. *Brown*, 11 *Ga. App.* 493 (75 S. E. 826); *Chisholm* v. *Atlantic Coast Line R. Co.*, 14 *Ga. App.* 166 (80 S. E. 528); *Harris* v. *Southern Ry. Co.*, 129 *Ga.* 391 (58 S. E. 873); *Howard* v. *Central Ry. Co.*, 138 *Ga.* 537 (75 S. E. 624); Schlemmer v. Buffalo Railroad, cited in second headnote supra; Roberts on Injuries to Interstate Employees, § 103.

In view of our ruling, reversing the judgment of the court below upon the ground that the petition set forth no cause of action, it is unnecessary to pass upon the other assignments of error.

*Judgment reversed. Russell, C. J., dissents.*