9481. LOUISVILLE & NASHVILLE RAILROAD CO. *v.* HOOD.

BROYLES, C. J. 1. Under the Federal "employer's liability act" (U. S. Comp. St. §§ 8657-8665), an employee of a railroad company, except in cases involving violation by the carrier of the statute enacted for the safety of employees, assumes the ordinary risks and hazards of his particular employment, and also those defects and risks which are known to him, or which are plainly observable, although due to the master's negligence. *Charleston & Western Carolina Ry. Co.* v. *Sylvester*, 17 *Ga. App.* 85 (86 S. E. 275), and cit.

2. Under the above ruling and the facts of the instant case a recovery by the plaintiff was unauthorized, and the court erred in overruling the motion for a new trial.

3. In view of the above holding it is unnecessary to pass upon the special assignments of error.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*

DECIDED FEBRUARY 24, 1920.

Action for damages; from Cobb superior court—Judge Morris. December 1, 1917.

Application for certiorari was denied by the Supreme Court.

This action was brought under the Federal "employer's liability act." The plaintiff was an "extra gang foreman" in charge of men employed by the railroad company to repair its track and keep the roadbed and the track in proper condition for the passage of trains. He was riding on a handcar with other employees, on his way to repair a part of the track, when the car, on rounding a curve of the road, was derailed by slag and stones on the track and which had fallen from where they had been piled up near it for use in ballasting the roadbed, and he received personal injuries, which he alleged were due to negligence of the railroad company in placing this ballast there and in piling it up in such a way that it was liable to fall on the rails as it did. The defendant in its answer denied the alleged negligence, and pleaded that the plaintiff himself was negligent, and that he assumed the risk of injury from the placing of the ballast in the manner alleged. The trial of the case resulted in a verdict for damages, and, the defendant's motion for a new trial being overruled, it excepted.

Parts of the plaintiff's testimony were as follows: "I could see the slag before I got to it. As far as seeing it was concerned, it was all along there; we had to contend with that every minute we were running. I knew all the time that that was the condition we worked under. I knew that it was the way we unloaded stuff

several times. . . That was the common condition; looking at it, you understand. . . Going around that curve I saw this condition ahead of me. I seen the stuff piled up on the outside of the rail ahead of me. . . My car continued at the rate of about 10 miles. . . I said a pebble about as big as your thumb, or something of that sort, would derail the wheel. I don't know how large that was we ran over. The cause of the derailment was this stuff falling down on the track. . . The matter of protecting the handcar is one of the duties of the foreman. . . The section foremen are the men of all other men whose duty it is to have a safe roadbed for the trains to go back and forth over. The company has to look to them to do it. . . I had four men on the car, going about 10 miles an hour around the curve, and did not send a flagman around the curve. . . It is my duty to flag around all dangerous places. I was in charge of my lever car there and in control of it. The men on it were subject to my orders. I could tell them to slow down, and it was their duty to do it. . . I had railroaded for 35 to 40 years in all capacities almost. . . When a foreman, extra gang man, or ordinary foreman goes out on the railroad track it is his duty to be on the lookout for any and all sorts of defects. He carries the eyes of the railroad company, so far as finding defects. . . When I started out it was as much my business and as much my duty to be looking out for spikes that might be loose or any sort of defects that might exist in the track as well as it was [for looking out] for the bucked track. That was true not only on that particular trip, but it was true all the time. . . I didn't know just where the bucked track was, but it a fact that it usually bucks on curves. . . I had not gotten to the bucked track when my lever car was derailed. . . I knew that the shaking and running of trains would cause it [the slag] to fall down. . . I knew that two trains had come over this track about a couple of hours before that. . . The passenger train had just come over this same piece of track. . . It was immediately after these trains passed that I left Hombre to go out on my lever car. . . Yes; it is also true they run extra trains up there on that road. They get up a train of coal cars and send them off down to the mines to be loaded extra; and I wouldn't know what minute they might come on me. . . This railroad is not very

old. . . I forget the age of it. . . There was a great deal
to do to bring it up to what railroad men call a standard or good
railroad."

See 149 *Ga.* 829 (102 S. E. 521).

*Tye, Peeples & Tye, D. W. Blair, W. E. Roberts, John Boston,*
for plaintiffs in error.

*George F. Gober, J. E. Mozley, H. B. Moss, W. I. Heyward,*
contra.