MISSOURI, K. & T. RY. CO. OF TEXAS v.
RIDDLE et al. (No. 254.)*

(Court of Civil Appeals of Texas. Waco.
Oct. 15, 1925. Rehearing Denied
Nov. 12, 1925.)

1. Master and servant ⬤⟹289(17)—Whether
flagman deliberately went on track held for
jury.

Whether deceased flagman could or did walk
with deliberation off the track on which a
train was coming, and then turn and walk back
onto the track when train was distant 100 to
200 feet and running 18 or 20 miles per hour,
held for jury.

2. Master and servant ⬤⟹285(11)—Whether
engineer's negligence was proximate cause of
injury to flagman held for jury.

Where engineer in charge of the train which
killed deceased flagman was negligent, both in
failing to stop train in response to signal given
by deceased and in failing to reduce rate of
speed by time he reached town's corporate limits
to six miles an hour, whether either of such
acts of negligence was the proximate cause of
the injury to deceased, who, it appeared, could
have reached a place of safety after having
given the signal, held for jury, under federal
Employers' Liability Act (U. S. Comp. St. §§
8657–8665).

Stanford, J., dissenting.

Appeal from District Court, McLennan
County; James P. Alexander, Judge.

Action by Mrs. J. A. Riddle and others
against the Missouri, Kansas & Texas Rail-
way Company of Texas. From an adverse
judgment, defendant appeals. Affirmed.

Spell, Naman & Penland, of Waco, for ap-
pellant.
Sam R. Scott, of Waco, for appellees.

BARCUS, J. This suit was instituted by
Mrs. Riddle as administratrix of the estate of
J. A. Riddle, deceased, against appellant,
seeking to recover damages under the federal
Employers' Liability Act (U. S. Comp. St. §§
8657–8665) occasioned by her husband, J. A.
Riddle, being killed while in the employ of
appellant. It was an admitted fact that at
the time of the injury the appellant and the
deceased, Riddle, were engaged in interstate
commerce and that the deceased was in ap-
pellant's employ.

At the time the deceased was killed he had
been sent by the foreman in charge of the
road bridge gang to stop all in-coming trains
because of a bridge being unsafe for trains
to cross. Mr. Riddle, as such flagman, went
the proper distance back and gave the proper
signals. The engineer testified that he saw
the flagman and received the signal to stop
at least 1,000 feet before reaching the flag-
man, and that he answered the signal by

two blasts of the whistle, which meant under
the rules that he had received the signal and
would stop, and that it was his duty as engi-
neer to bring the train to a full stop and re-
ceive the message from the flagman; that
when he received the signal to stop he ap-
plied only the service application of air to
the brakes, which had the effect of slowing
down the train from 25 or 30 miles per hour
down to 18 or 20 miles per hour; that he
did not attempt to bring the train to a com-
plete stop before reaching the flagman; that
he intended to lean out of the engine and re-
ceive the message from the flagman as he
passed him. The rear brakeman testified that
if the engineer had used the emergency brakes
when he first saw the flagman he could have
stopped the engine by the time it reached him.
The engineer testified that the deceased flag-
man remained on the track until the engine
was within 100 to 250 feet, when he, with de-
liberation, walked off of the track and then
turned around and stepped toward the track
and stopped as though he were picking up
something off of the rail, when the step on
the pilot struck him on the head.

The fireman, who was riding on the engine
tank near the engineer on the opposite side of
the train, testified that the flagman remained
on the track until the train was within about
100 feet, and that he then turned east to
walk off of the track and was lost to the
view of said fireman by reason of the engine
coming between him and the flagman.

The rear brakeman testified that he saw
the flagman about 1,000 feet ahead of the en-
gine flagging the train and that he was at
said time in the middle of the track. The
train that hit Riddle was traveling north.
Miller testified that Riddle had his right
cheek bone broken just under his right eye,
and that there was a V-shaped wound on the
top of his head.

The appellee, as grounds of negligence,
claimed that the injury occurred within the
city limits of Waco, and that, under the or-
dinances of the city of Waco, the freight train
was required to reduce its speed within the
corporate limits to 6 miles an hour, and that,
under the rules of the railway company, when
an engineer received the flag signal to stop,
he was required to bring the train to a full
stop by the time he reached the flagman, and
that in the violation of said city ordinance,
and in the violation of said rule of the rail-
way company with reference to the handling
of trains, the engineer was negligent, and
that such acts of negligence were the proxi-
mate cause of the injury which resulted in
the death of the flagman.

The defense of appellant was a general de-
nial, and it specially pleaded that the death
of the deceased was occasioned by his sole
negligence, in that after he, the flagman, had
reached a place of safety, he walked back

or stooped over on the track, where he was struck by the engine.

The cause was submitted to the jury on special issues. The jury found that the accident occurred within the corporate limits of the city of Waco; that the train was running more than 6 miles an hour, and that the speed of the train was the proximate cause of the injury; and further found that failure of the engineer to stop the train before he passed the flagman was negligence, which was the proximate cause of the injury.

Appellant requested the court to instruct the jury to return a verdict for it because the uncontroverted evidence shows that after the flagman had reached a place of safety he then voluntarily stooped over the track so that he was struck by the engine, and because the evidence shows that the flagman, after he had given the signal to the engineer to stop and had reached a place of safety, voluntarily returned to a place of danger, where he was struck. The court refused to give said peremptory instruction, but submitted to the jury said issues, which the jury answered in the negative.

The testimony shows that when the flagman was struck the train was running at least 18 to 20 miles an hour, and that from the time the engineer received the signal to stop he had reduced the speed of the train only 5 to 7 miles per hour, but that he could, by use of the emergency brake with which the train was equipped, have brought the train to a complete stop by the time it reached the flagman. The engineer testified that he recognized the signal as being a positive command to stop the train and ascertain the cause. In utter disregard, however, of this command to stop, he only applied the service brake and was slowing the train down, and after his engine hit the flagman, he testified, he ran from 800 to 1,000 feet before he could bring his train to a stop. The jury found, and the evidence is sufficient to sustain the finding, that the injury was inflicted within the corporate limits of the city of Waco. The engineer testified that he knew it was a violation of the city ordinances for the train to run more than 6 miles an hour within said corporate limits.

[1] Appellant contents that the testimony is undisputed that deceased, before the train struck him, had reached a place of safety and then voluntarily placed himself in a position to be struck by the train. This issue was submitted to the jury and answered against appellant, and their finding is sustained by the testimony. The engineer testified that the flagman was on the track when the engine was within 100 to 250 feet, and the fireman testified that he was on the track when the train was within 100 feet of him. The flagman started to leave the track, walking east. He was struck on the right cheek by the train going north. If he had been facing west when the train hit him he would have been struck on the left cheek. It was for the jury to determine whether he did, could, or would walk with deliberation off the track and then turn around and walk back onto the track while the train was running 100 to 200 feet while running at the rate of 18 or 20 miles per hour, and their verdict is supported by the testimony.

[2] Appellant further contends that it was the duty of the flagman after he had flagged the train to take care of himself and get to a place of safety. Under the rules of the railroad, with which the flagman was familiar, it was the duty of the engineer to bring the train to a stop by the time it reached the flagman. It was also the duty of the engineer to reduce the train's speed to 6 miles per hour by the time it reached the corporate limits of the city of Waco, and we cannot say as a matter of law that the flagman did not have a right to rely upon the train stopping by the time it reached him, or at least being reduced to a slow rate of speed, and that he did not discover the train would not so stop or be reduced in speed in time for him to reach a place of safety. Under the federal Employers' Liability Act it is provided:

"The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." U. S. Comp. St. § 8659.

It has been universally held that the questions of negligence and proximate cause are ordinarily ones for the jury to determine, and, under the federal statute, contributory negligence on the part of the employee is not a bar against recovery. Grand Trunk W. R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168; Philadelphia & R. Ry. Co. v. Marland, 239 F. 1, 152 C. C. A. 51; Southern Ry. Co. v. Mays, 239 F. 41, 152 C. C. A. 91; Illinois Central Ry. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528; K. C., M. & O. Ry. Co. v. Estes (Tex. Com. App.) 228 S. W. 1087; Gulf, Col. & Santa Fé Ry. Co. v. Cooper (Tex. Civ. App.) 191 S. W. 579 (writ refused); Lancaster v. Garrett (Tex. Civ. App.) 258 S. W. 271; Payne v. Young (Tex. Civ. App.) 241 S. W. 1094.

The engineer in charge of the train which killed the flagman was negligent, both in failing to stop the train in response to the signal given him by the flagman and in failing to reduce the rate of speed by the time he reached the corporate limits of Waco to 6 miles per hour, and it was a question of fact as to whether either of these acts of negligence was the proximate cause of the injury to the deceased.

Appellant, by a number of assignments of error, complains of the court's action in the admission of certain testimony. We have

carefully examined each of said assignments and, without discussing each of them separately, we do not think any reversible error is shown.

All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

STANFORD, J. Not being able to agree with my associates in the disposition of this case, I hereby file the following dissenting opinion:

This suit was brought by Mrs. J. A. Riddle, for herself as surviving wife of R. H. Riddle, deceased, and in behalf of Jesse Riddle, their minor son, and afterwards plaintiff amended and prosecuted said suit as administratrix and legal representative of the estate of R. H. Riddle, deceased, against the Missouri, Kansas & Texas Railway Company of Texas, to recover damages for the death of R. H. Riddle, alleged to have been caused by the negligence of the appellant in propelling an engine and train against the deceased while he was in the discharge of his duties in the employ of appellant as a carpenter with a bridge crew, and while working as a flagman under the direction of the foreman of a bridge gang.

The case was submitted to the jury upon special issues, which issues, as far as material, and the answers of the jury thereto, are as follows:

"Special Issue No. 1: Did the injury received by the deceased happen within the city limits of the city of Waco? Answer: Yes.

"If you answer the foregoing question 'No,' you need not answer questions 2 and 3, but, if you answer it 'Yes,' then you will answer:

"Special Issue No. 2: At the time of the injury in question was the train in question running in excess of 6 miles per hour? Answer: Yes.

"If you answer this question 'No,' you need not answer the next question, but, if you answer it 'Yes,' then you are asked:

"Special Issue No. 3: Was the running of said train at a rate of speed in excess of 6 miles an hour, if the same was running in excess of 6 miles an hour, the proximate cause of the injury received by the deceased? Answer: Yes.

"Special Issue No. 4: Was the engineer who was in charge of the train in question guilty of negligence in failing to stop his train before he passed the deceased? Answer: Yes.

"If you answer this question 'No,' you need not answer the next one, but, if you answer it 'Yes,' then you will answer:

"Special Issue No. 5: Was such negligence, if any, the proximate cause of the injury received by the deceased? Answer: Yes.

"Special Issue No. 6: Did the deceased, just before he received the injury in question, voluntarily leave a place of safety and place himself in a position of danger by the side of the railway track in question as the train approached? Answer: 'No.'"

"Special Issue No. 10: Did the deceased, in accepting employment as a flagman, assume the risk of being injured in the manner in which he was injured? Answer: No.

"Special Issue No. 11: What amount of money, if paid now, will reasonably compensate Mrs. Riddle, wife of the deceased, for the loss of pecuniary benefits, if any, that she would have received from the deceased had he not been killed? Answer: $6,000.

"Special Issue No. 12: What amount of money, if all paid now, will reasonably compensate Jesse Riddle, son of the deceased, for the loss of pecuniary benefits, if any, that he would have received from the deceased up to the time the said Jesse Riddle would have become 21 years of age? Answer: $1,500.

"Special Issue No. 13: To what extent—that is, what per cent.—should the damages awarded Mrs. Riddle and her son, Jesse Riddle, if any, be reduced by reason of the contributory negligence, if any, on the part of the deceased? (Not answered.)"

Upon the answers of the jury so returned, the court entered judgment for appellee Mrs. J. A. Riddle, as administratrix for $7,500, $6,000 of said amount for the benefit of appellee, and $1,500 for the benefit of the minor son, Jesse Riddle.

By its first proposition under its sixteenth assignment of error, appellant contends the trial court erred in refusing to give its specially requested instruction No. 1, instructing a verdict for appellant. This assignment requires an examination of the evidence, the most of which is without conflict. The deceased was about 60 years of age, was a bridge and building carpenter, had followed said line of work most of the time for 10 years, and for several years in the employ of appellant. There were two bridge and building crews, both under S. L. Taylor as foreman, instructed to repair a bridge on appellant's line in the southwest part of Waco, between Sixteenth and Seventeenth streets. Appellant's line of road runs practically north and south through the city of Waco. About 1:30 p. m. on May 19, 1923, seeing he would be unable to complete the repairs on said bridge before trains were due, Taylor, the foreman, sent one man north on appellant's line to flag south-bound trains, and sent the deceased, with a flag and torpedoes, south, and told him to go south on appellant's line one mile and put a torpedo on the east rail, and go on south 5 telephone poles further and put down another torpedo on the east rail, and go on 3 rail lengths further and put another torpedo on the east rail, and then come back just north of the first torpedo placed on the rail and flag any train that might come north until he was sent for. Said foreman also told deceased that a train approaching from the south would be coming down a very heavy grade, and, if it was a heavy train, it might not be able to stop before it passed him, and for him not to be alarmed if it did so. There was no contention that the deceased was not an experienced flagman. The deceased carried out the

instructions in placing the torpedoes as given him, and returned north to about where he placed the first one. A train of 38 cars, 32 loaded with cattle and 6 empties, approached from the south, and when within about 1,000 feet of the flagman, the engineer, the fireman and the two brakemen all saw the flagman with a red flag giving the stop signal. The engineer answered it with 2 blasts of the whistle, which was intended to let the flagman know that he had received his signal. The engineer had run over a part of the torpedoes and had made preparation to slow down, and when he saw and answered the flag signals he made a service application of his brakes. At the time the engineer saw and answered the flag signals he was on a straight track, running about 25 miles per hour on a heavy down grade, and about 1,000 feet from the flagman.

Engineer Dain and Brakeman Bigham testified, in substance, that as the train approached the deceased walked off of the track to the east side, some 3 or 4 feet from the east rail, in the clear, and that when the engine was very close to him he moved back a little closer to the east rail and stooped over, like he was picking up something on the east rail, when the step of the engine struck him on the head; that when close to deceased, when he stepped back near the east rail as though picking up something, the engineer threw his brakes into emergency and used all the braking power on the train, but was unable to stop before striking deceased. The train was slowing up all the time after running over the first torpedo. The engineer testified further:

"I do not believe it would have been possible to have brought my train to a standstill, if, when I first discovered the flagman on the track, I had made an emergency application of my brakes. I don't believe it would have been possible to have stopped the train by any application of air before I reached and passed the flagman."

J. F. Parks, the fireman, testified, in substance, that, when the engine was within 1,000 or 1,100 feet of the deceased, he saw him standing in the center of the track, flagging the train, and that he continued to stand there until the engine was within about 100 feet of him, when he walked off the track in an ordinary walk to the east; that he did not see him when he was struck. The fireman also said that when they ran over the first torpedo, and the engineer answered the flag signal, the engineer applied his air brakes and the train was slowing down, and, when he saw the flagman walk off, the engineer reversed his engine and did all he could to stop. The fireman testified further:

"That was a heavy freight train we were pulling that day and we were on a down grade."

The rear brakeman saw him flagging when 1,000 feet away, but only for a very short time. The conductor, being in the caboose, never saw him. The train was running about 18 miles per hour at the time the deceased was struck.

There is some evidence in the record that the point where deceased was struck was about 10 feet inside the corporate limits of the city of Waco, but a preponderance of the evidence shows said point was 340 feet outside the city limits. A city ordinance was introduced, limiting the speed of freight trains within the corporate limits to 6 miles per hour. The deceased was not run over. There were no wounds on any part of his body, except a triangular wound on the top of his head and a large bruise on the right side of his head and temple. The engineer's step, alleged to have struck him, was about one-half an inch thick. When picked up his body was 3 or 4 feet from the track, and extending away from the track, his head toward the northeast. It was about a mile from where the deceased was struck to the bridge that was being repaired.

It was agreed by appellant and appellee that at the time of the injury the appellant was engaged in interstate commerce, and that the deceased, as an employee of appellant, was engaged in service in furtherance of such commerce.

The deceased was a flagman, sent out to flag any trains that might approach from the south. He did not have to look for a train from the north, but it was his special duty to see and to flag any train approaching from the south. He saw this freight train approaching on down grade, flagged it, and received a signal—two blasts of the whistle—meaning the engineer had received his flag signal, when said train was 1,000 feet away. He had no further duty to perform except to step aside to a place of safety, and, when the train stopped, deliver his message to the engineer. He could have stepped off the track to a place of safety almost instantly. It was only necessary to take about 2 or 3 steps. In fact, there is no evidence that it was necessary for him to be on the track to flag the train. I think it is immaterial whether he walked off the track to a place of safety, and, when the train was very close, stepped back near the east rail, and stooped over as though picking up something from the east rail, or whether he remained on or near enough to the east rail to be struck. In either event, I think his own negligence was, as a matter of law, the sole proximate cause of his death. There is no contention that the employees in charge of the train saw the deceased in a position of peril in time to have prevented the injury. Suppose he expected the engineer, in obedience to his signals, to reduce the speed of the train and finally bring it to a stop at the point where he was,

he could not shut his eyes and speculate on whether or not the train would stop at said point. I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; Frias et al. v. G. H. & S. A. Ry. Co. (Tex. Civ. App.) 266 S. W. 547; T. & P. Ry. Co. v. Hope (Tex. Civ. App.) 149 S. W. 1077; 'Smith v. Railway Co., 61 Tex. Civ. App. 225, 128 S. W. 1177; Pillow v. Texarkana & Ft. S. Ry. Co., 55 Tex. Civ. App. 597, 119 S. W. 128; H. & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409. If the deceased was looking, he was bound to have seen that the train was going to go by him, in time to have stepped away from the track to a place of safety and averted the injury. It was a clear day, about 2 p. m. He was not blinded by a glaring headlight. There was nothing to obstruct his vision or to deceive him of the near approach of the train. Such conduct, with no explanation or attempted explanation for it, I think, was so opposed to the dictates of common prudence that reasonable minds cannot differ as to the question of his negligence in not moving from the track under all of the circumstances, and that such negligence was the sole proximate cause of his injuries.

In the case of Ellis' Adm'r v. Railway Co., 155 Ky. 745, 160 S. W. 512, the Supreme Court of Kentucky said:

"When a flagman is sent out to watch for trains and warn them of danger, the company and its trainmen have a right to presume that he will not only watch for trains, but also for his own safety, and his failure to do this is his own negligence, and he cannot recover of the company for an injury which he received by reason of his neglect, unless his presence and peril were discovered by those in charge of the train in time to avoid striking him, by the exercise of ordinary care. * * * If one's death is caused solely by his own negligence, he cannot recover under either the state law or the federal Employers' Liability Act."

The above statement from the opinion in the Ellis Case is believed to be good law, for it seems it would be unreasonable to require a railroad company, when it sends out a watchman to flag a train, or to warn approaching trains, to send a second man to watch the first one and to warn him of the approach of trains. In the case at bar, R. H. Riddle's duty to the company and to himself was: (1) To look out for trains; (2) to flag them; and to protect himself by keeping out of the way of the moving trains. This is believed to be the law, not only in Kentucky, Missouri, Georgia, and Tennessee, but most of the states, and even in Texas. Ellis' Adm'r v. Railway Co., 155 Ky. 745, 160 S. W. 512, and cases there cited; Louisville & N. R. Co. v. Seeley's Adm'r, 180 Ky. 308, 202 S. W. 638, L. R. A. 1918D, 925; Pillow v. Texarkana & Ft. Smith Ry., 55 Tex. Civ. App. 597, 119 S. W. 128; H. & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409; S. A. & A. P. Ry. Co. v. McMillan, 100 Tex. 562,

102 S. W. 103; Wickham v. Louisville & N. R. Co., 135 Ky. 288, 122 S. W. 154, 48 L. R. A. (N. S.) 150.

In the case of S. A. & A. P. Ry. Co. v. McMillan, cited above, our Supreme Court, by Justice Brown, said:

"If McMillan was standing upon the track when the fireman discovered him, and there was nothing to indicate that he was unable to leave the track, or that he would not do so, those operating the locomotive had the right to presume that he would get off the track and avoid the injury. It was not the duty of the servants in charge of the train to stop it under such circumstances, until they discovered that he did not intend to, or could not, leave the track."

In the case of H. & T. C. Ry. Co. v. O'Donnell, cited above, our Supreme Court said:

"They [train crew] were not required to anticipate that he would be guilty of an act of negligence, either by remaining in danger, if he was so, or by putting himself in danger."

The employees, after discovering the deceased flagging the train, had a right to presume he knew of the approach of the train, as he evidently did, and that he would avoid placing himself or remaining in unnecessary danger of being struck by it; and as he knew of the train's approach, and from his experience and the nature of his employment knew the danger of standing too close to the track, and yet did so, without any excuse or explanation, I think the calamity of his death was due solely to his own carelessness. Coleman's Adm'r v. Railway Co., 139 Ky. 559, 63 S. W. 39.

Appellee alleged only two grounds of negligence, to wit: That the train crew ran said train more than 6 miles per hour within the corporate limits of the city of Waco; and the other was that the engineer ran the train past the flagman. There is no complaint of the speed of the train as a ground for recovery, except in so far as it exceeded 6 miles per hour —the speed limit. The jury found appellant negligent in both respects as charged. As there is some evidence tending to support such findings, I will assume that said findings are correct. But, assuming that the jury was warranted in finding that appellant was guilty of negligence in the two respects charged, were they also warranted in finding that such negligence was the proximate cause of R. H. Riddle's death? And as the case was tried under the federal Employers' Liability Act, under which assumed risk is a complete defense, were the jury authorized to find that deceased did not assume the risk? For there must be a concurrence of these essentials in order for appellee to recover. In order for an act to be a proximate cause of an injury, it must be such an act that said injury, or some similar injury, ought reasonably to have been foreseen or anticipated by those inflicting such injury, in

the light of the attending circumstances; or, as said by Chief Justice Gaines, in the case of T. & P. Railway Co. v. Bigham, 90 Tex. 226, 38 S. W. 164:

"It is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Bearing in mind the rule of law as stated in the above cases, to the effect that the railway company and its trainmen have a right to presume that a flagman, or any one else standing on the track, conscious of the train's approach, with nothing to indicate that he cannot or will not leave it, will protect himself by leaving the track, ought the train crew in this case to have foreseen or anticipated that, if they allowed this train to run over 6 miles per hour, they would probably run over the flagman? Was such the natural or probable consequence? Or that, if said train was permitted to run past where the flagman was, it would likely run over him? Was this the natural or probable consequence? The train crew knew the flagman was aware of the approaching train when it was 1,000 feet away, and they knew it was his duty to avoid placing himself or remaining in a position of danger of being struck by said train, and the train crew had the right to presume that he would perform such duty and they could not, I think, reasonably anticipate that he would not do so. And so, as I think, he himself unexpectedly created a situation that rendered it impossible for the train crew to avoid the injury. Seale v. G. C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; G. C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756.

The defendant should have anticipated that its negligence, in violating the city ordinance by running more than 6 miles per hour would endanger members of the public who might be attempting to cross its track on a public crossing, if there had been such crossing, and who were unaware of the approach of said train. But an employee who knows that the train is coming, and who is charged with the duty of keeping out of its way, cannot rely upon the duty toward members of the public charged with no such duty. The speed ordinance was intended to protect members of the public who might be on or about defendant's track, but was not designed to protect employees who were charged with the duty of knowing of the approach of trains and of keeping out of their way, for, by performing his duty, the speed of the train would be harmless to him. And again, it being the duty of the flagman to keep out of the way of said train, and the train crew having the right to presume he would perform such duty, they could not anticipate that he would fail to perform same, and negligently expose himself to danger of being run over, if they ran more than 6 miles per hour. Wickham's Adm'x v. Railway Co., 135 Ky. 288, 122 S. W. 155, 48 L. R. A. (N. S.) 150.

It is also true the train crew should have anticipated that its negligence in running past the flagman would endanger said freight train and its contents, in that said act might result in running into a defective track, causing a wreck. But could appellant's train crew, under all the circumstances, reasonably anticipate or foresee that the flagman would place himself near enough to the east rail to be struck, and remain in said position until he was struck by the engine? That is, considering the fact that he had flagged the train and received an acknowledgment of his signal when the train was 1,000 feet away, and that he had no further duty to perform except to walk off the track to a place of safety; that the track was straight; that there were no obstructions to obscure his vision; that he knew the train was approaching and the train crew knew he was aware of its approach—under these circumstances, could the train crew reasonably anticipate that he would place himself sufficiently close to the east rail to be struck, and remain in said dangerous place until struck and killed? Was this the natural or probable consequence? Appellant's train crew had the right to presume that he would protect himself by walking off the track to a place of safety, and, if so, then they certainly could not reasonably have anticipated that he would remain on the track or walk back on it immediately in front of the approaching train. Appellant might have anticipated such an event in case of negligence on the part of the deceased flagman, but no one is required to act in such case upon the theory that parties who may possibly be affected by his conduct will be injured through their own negligence.

In the case of T. & P. Ry. Co. v. Bigham, cited above, Chief Justice Gaines of our Supreme Court said:

"It is usually laid down, in cases of negligence, that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. * * * But it seems to us that as applied to the law of negligence, at least, a better ground for the rule is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation

to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed. 'It can hardly be negligent not to provide against what no one can anticipate,' says Blackburn, J., in Smith v. Railway Co., L. R. 6, C. P. 14."

As said in the case of Southern Ry. Co. v. Blackwell, 20 Ga. App. 630, 93 S. E. 321, by the Court of Appeals of Georgia:

"To justify a recovery for an injury caused by a train striking a section hand while engaged in repairing a track, it must be shown that the proximate cause of his injury was the railway company's neglect of some duty due to *him in respect to his protection from injury by passing trains.*" (Italics ours.)

In the case of McCalley's Adm'r v. Chesapeake & O. Ry. Co., 169 Ky. 47, 183 S. W. 234, L. R. A. 1916F, 551, the Court of Appeals of Kentucky said:

"The question for determination is: Did the appellee owe decedent the duty of maintaining a lookout for him, or of warning him of the train's approach? If it owed to him no such duty, it could not be an act of negligence upon its part to fail to observe any precautions for his safety; for negligence necessarily depends upon a corresponding duty."

In the case of Louisville & N. R. Co. v. Seeley's Adm'r, 180 Ky. 308, 202 S. W. 638, L. R. A. 1918D, 925, the Court of Appeals of Kentucky said:

"In the Harrod Case, 115 S. W. 699, the question was asked: Would the speed of a train, though negligence as to passengers or licensee, be negligence as to the watchman? And the court said: 'We think not, and it would make no difference whether they were in the yard at Georgetown, at Kincaid, or in 'the country where there was no station; for it must always be borne in mind that negligence toward a person is the antithesis of the duty owing to that person.' "

In the case of Cincinnati, N. O. & T. P. Ry. Co. v. Swann's Adm'r, 160 Ky. 458, 169 S. W. 886, L. R. A. 1915C, 27, the court said:

"So that, unless the death of Swann resulted in whole or in part from the negligence of the employees in charge of the train that struck him, there can be no recovery; and it is equally true that these employees could not have been guilty of negligence towards him, unless they failed to discharge some duty owing to him."

The above is the same principle of law discussed and approved by our Supreme Court in the case of T. & P. Ry. Co. v. Bigham, cited above. Negligence as to a person is a violation a duty to that person, and an act may be negligence as to one and not to another. What duty did the engineer in this case owe to the deceased flagman, designed to protect him from injury by passing trains? Was it his duty to reduce the speed of the train to 6 miles per hour while in the city limits, in order to avoid striking the flagman? I think not. That was his duty as to the public or licensees on the track unaware of the approach of the train, and as to them it was negligence, but not so as to the flagman, an employee who knew of its approach, and who was charged with the duty of protecting himself from passing trains. Was it the duty of the engineer to stop the train at the point where the flagman was in order to avoid running over him? I think not. That was his duty to the owners of the contents of the train and the other members of the train crew, as a failure to so stop might cause a wreck, and as to such parties it was negligence, but not so as to the flagman. It was the primary duty of the flagman under his employment to protect himself from injury by moving trains, and the engineer had the right to rely upon his performance of said duty. So, if the engineer violated no duty to the flagman designed to protect him from injuries by passing trains, then, as to the flagman, he was guilty of no negligence; and, although his acts were negligent as to others, such negligence could not be a proximate cause of the flagman's injuries. As said by the Court of Appeals of Georgia in the case of Southern Ry. Co. v. Simmons, 24 Ga. App. 96, 100 S. E. 5:

"It was further held in the Blackwell Case that, 'to justify a recovery for injury caused by a train striking a section hand while engaged in repairing a track, it must be shown that the proximate cause of his injury was the railway company's neglect of some duty to him in respect to his protection from injury by passing trains—citing Norfolk, etc., Ry. Co. v. Gesswine, 144 F. 56, 75 C. C. A. 214; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; Ellis' Adm'x v. Louisville, etc., Ry. Co., 155 Ky. 745, 160 S. W. 512; Morris v. Boston & Maine R. R., 184 Mass. 368, 68 N. E. 680."

Appellee made no attempt to explain why the deceased assumed said dangerous position and permitted himself to be struck. I think from the record before us that his so doing was a new, independent intervening act on the part of the deceased, in no way caused or contributed to by the original negligence of the train crew, and an act which could not reasonably have been foreseen or anticipated by the train crew, and an act which was the direct and immediate cause of his death and without which the injury would not have occurred, and an act which was the proximate, and, as I believe, the sole proximate cause of his death. Brandon v. Mfg. Co., 51 Tex. 121; Seale v. G. C. & S. F. Ry. Co., 65 Tex. 278, 57 Am. Rep. 602; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Logan v. Wabash Ry. Co., 96 Mo. App. 461, 70 S. W. 734; M., K. & T. Ry. Co. of Tex. v. Dobbins (Tex. Civ. App.) 40 S. W. 865; T.

& P. Ry. Co. v. Doherty (Tex. Sup.) 15 S. W. 44; T. & P. Ry. Co. v. Beckworth, 11 Tex. Civ. App. 153, 32 S. W. 347; Yecker v. San Antonio Traction Co., 33 Tex. Civ. App. 239, 76 S. W. 780; Behling v. Southwest Pipe Lines Co., 160 Pa. 359, 28 A. 777, 40 Am. St. Rep. 724. See note, 36 Am. St. Rep. 807, 861.

"Since this action was brought under the federal 'Employers' Liability Act,' the provisions of that act are controlling, and the case must be decided in accordance therewith. As was held in Charleston, etc., Ry. Co. v. Sylvester, 17 Ga. App. 85, 86 S. E. 275: 'In a suit brought under the federal Employers' Liability Act, except * * * as to violations of federal statutes for the protection of employees, assumption of risk is an absolute defense, while contributory negligence merely reduces the damages. Roberts, Injuries to Interstate Employés, § 130; Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062; L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.' * * * Under the provisions of this act, the plaintiff not only assumed whatever risks were normally incident to his employment, but also those defects and risks which were known to him, or which were plainly observable, although due to the master's negligence." Southern Ry. Co. v. Simmons, 24 Ga. App. 96, 100 S. E. 5; Charleston, etc., Ry. v. Sylvester, 17 Ga. App. 85, 86 S. E. 275, and cases there cited.

In the present case, there is no question but that the deceased saw the freight train approaching when 1,000 feet away, he standing on the track flagging it, and received an answer to his signal. His duties as a flagman did not require him to remain on the track or dangerously near it, but did require him to step aside to a place of safety. This he failed to do, and continued on the track, or near enough to it to be struck and killed. There was nothing to deceive him as to the speed of the train or the nearness of its approach, and he was bound to have known that the train would pass where he was, in time for him to have stepped aside to a place of safety, and the danger of remaining where he was was so obvious that any person of ordinary intelligence must have realized it. He ought, I think, be held to have assumed the risk of such an obvious danger.

I am aware that the questions of proximate cause and assumed risk are ordinarily questions of fact for a jury, but where there is no controversy about the material facts, and but one reasonable conclusion can be drawn from the facts, they become questions of law for the court. Frias v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 266 S. W. 547, and cases there cited.

Under the law as applied to the facts shown by the record, I believe the trial court should have instructed a verdict for the defendant, and that the case ought to be reversed for his failure to do so.