## GRABNER v. TEXAS PACIFIC COAL & OIL CO. (No. 238.)*

(Court of Civil Appeals of Texas. Waco. Nov. 17, 1925. Rehearing Denied Jan. 21, 1926.)

**1. Mines and minerals ⟪118—Miner seeking employment held invitee, putting company under duty to use ordinary care in inspecting.**

Miner, going into mine with company's boss for purpose of negotiating for employment to remove débris, became an invitee, putting company under obligation to use *ordinary care* in inspecting premises to discover its dangerous condition.

**2. Mines and minerals ⟪118—Use of ordinary care by mining company, proximate cause, and contributory negligence of invitee, held questions of fact for jury.**

Whether mining company used ordinary care to prevent miner, in mine as invitee, from being hurt, whether its failure to do so was proximate cause of injury, and whether invitee was guilty of contributory negligence, *held* questions of fact for jury.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Suit by Gottfried Grabner against the Texas Pacific Coal & Oil Company. From a directed verdict, plaintiff appeals. Reversed and remanded.

Morrow & Stollenwerck, of Hillsboro, and Wright Morrow, of Austin, for appellant.

John Hancock and Clarence Wightman, both of Fort Worth, for appellee.

BARCUS, J. Appellant instituted this suit against appellee to recover damages for personal injuries which he received in the coal mines of appellee in Thurber, Tex. The cause was tried to a jury, and, at the conclusion of the testimony, the trial court instructed a verdict for appellee; hence this appeal.

Appellant was a miner, belonged to the Miners' Union, and was engaged in mining coal for appellee under a general contract entered into between the Miners' Union and the appellee, coal company. Under said contract, each miner was allotted a certain section of the coal mine in which he might work, and was paid for the coal which he dug at so much per ton, and was permitted to dig said coal in any method and manner he deemed proper and best. The portion of the mine in which appellant had been working at the time he received the injury was reached by going down a shaft 200 feet into the ground, and from said shaft a roadway or tunnel had been dug 500 or 600 feet. The space along said tunnel or passageway was divided into sections, each miner being given a 36-foot space, and the coal was mined back to the extent of 200 feet in each direction from said tunnel or passageway. The place allotted to appellant was about 500 feet from said shaft, and he had extracted the coal from said place

allotted him back to a distance of about 35 feet. Under the rules, the miner was required, after he had extracted the coal, to prop the roof of the mine to prevent, as far as possible, the falling of rocks. The vein of coal being mined was from 1½ to 3 feet in thickness, and the miner was required to dig a passageway at least 5½ feet deep, in order to have a place to work and a sufficient space in which the company could run its car to haul the coal from the mine. The company furnished the miner the necessary props to use in bracing the roof, but the miner was required to put same in place and properly prop the roof. The miner was required to remove the "gob," which in the mine vernacular was the rock and dirt that was necessary to be moved in order to get the coal and make the space the full depth required. In order to complete the work, after the coal is removed from a section, it is necessary for the miner to brush his place, which means removing a sufficient amount of the "gob" to make the space the necessary height, and, after he has brushed his place and removed the "gob" and properly propped the roof, it then becomes the duty of the company to look after the roof. The miner is supposed to have control of, and be responsible for, the condition of 9 feet of space from the face of the coal where he is digging back toward the rear. The remainder of the space, beginning at 9 feet behind where he is digging the coal, after it has once been propped, is under the supervision of the company. Under the rules between the miner and the coal company, if a "squeeze" occurred—and by a "squeeze" is meant the settling of the earth above the mine, which causes the roof to cave in—if the mine had originally been properly braced, the company was required to remove the débris caused by the "squeeze." According to the testimony, it was impossible for any props to be placed sufficient to hold against a "squeeze," and, when a "squeeze" occurred, the miner was required to report said fact to the mine boss, and, if the mine boss failed or refused to begin removing the débris caused by the "squeeze" within 2 hours, the miner had the privilege of removing same himself, for which he was paid a stipulated wage of $2.84 a "shift." If the miner removed the débris caused by the "squeeze" without reporting to the mine boss, he was not allowed anything for his labor in removing same.

On the day the injury to appellant occurred, the miners had been laid off for 4 days, and during said time a "squeeze" had occurred, and, when the miners returned to their work on the fifth day, they discovered same, and appellant, with the other miners, reported said fact to Joe Hopkins, the mine boss. Hopkins, accompanied by appellant, went to the section of the mine where appellant had been working to investigate the matter and to make arrangements to have the dé-

---

*Writ of error dismissed for want of jurisdiction March 10, 1926.

bris caused by the "squeeze" removed, and, while appellant and the mine boss were negotiating with reference to having same removed, a rock fell from the roof of the mine, falling on appellant, which caused serious permanent injuries; there being no question about the seriousness of the injury.

Appellant in his petition claims appellee was and is liable for said injuries, because its servants, agents, and employés were negligent in not properly inspecting the roof and walls of the mine at the point where appellant was injured after same had been idle 4 days, and were negligent, in that they knew, or could have known by the use of ordinary care and diligence, that the roof, walls, or side of said mine at the point where plaintiff was injured were in a dangerous condition and without proper supports, and from which rocks were liable to fall and injure plaintiff, and were negligent in failing to exercise reasonable care to provide plaintiff a safe place in which to work, and were negligent, in that they knew, or could have known by proper inspection of said mine, walls, side, and roof thereof, that said rock which fell on appellant was loose and liable to fall, and were negligent in failing to exercise reasonable and ordinary care to inspect the walls, roof, and side of said mine at the point where plaintiff was injured; that each of said acts of negligence was the proximate cause of the injury. He then alleged in detail the injuries which he had received, which are unnecessary to state.

Appellee answered by general demurrer and general denial, and for special answer alleged that the injury occurred in the room or working place of appellant, and that it was appellant's duty to properly prop the roof of the same and to make the same a reasonably safe place in which to work, that appellant knew a "squeeze" had occurred, and, knowing the condition of the room, voluntarily went into same, not to dig coal, but to negotiate with defendant for employment to remove the débris caused by said "squeeze," and that plaintiff, having voluntarily gone into said place, knowing the danger, was guilty of negligence which was the proximate cause of his injury.

The judgment of the trial court does not give any theory upon which the instructed verdict for appellee was given. Appellee in its brief contends that the instruction was proper, because, under the written contract between appellee and the miners, each individual miner became an independent contractor mining coal, and was individually responsible for the room or place in which he was working, and was required to properly prop the roof of his workshop, and that appellee had no control thereover and no responsibility with reference thereto. As we view the record in this case, this contention is not tenable, because the facts will not support said theory. If the injury had occurred while appellee was actually engaged in mining, the question might be presented. Since, however, said condition does not exist, we do not pass on that question. The undisputed evidence in the record shows that the miner had not worked for 4 days preceding the injury, and during said time the "squeeze" had occurred. Under the undisputed evidence in the record, when the "squeeze" occurred it then became the appellee's duty to remove the débris caused by the same, and the company had the right to either employ the miner to remove the débris or could employ any outside parties, and, until the débris from the "squeeze" had been removed, it was impossible, on account of the débris, for the miner to work, except in removing the débris, and he had no authority or right to remove the débris, except at his own expense, until he had reported to appellee's mine boss and given appellee the privilege of removing the débris. For the first 2 hours after a "squeeze" was reported to the mine boss, the company had complete control over said mine, and the miner had no right during said 2 hours to do any act, except at his own cost and as a volunteer. The evidence is further undisputed that the injury received by appellant occurred before the 2 hours' time had expired, and occurred while appellee's boss was negotiating with him to remove the débris from the mine for the company.

Gomer Gower, appellee's superintendent, testified:

"We have our pit bosses to inspect the roadways and entries, and, if a dangerous condition is found, to remedy it. We consider that we owe the miners a safe place in going to and from their places. The clearing out of that rock was the first thing to be done after the squeeze occurred. If Mr. Hopkins (the mine boss) went there and discovered that squeeze, his first duty would have been to have made arrangements to have cleaned up that fall. It seems he and Grabner were there talking about it. The pit foreman was performing the first duty devolving upon him to have it cleaned up."

Henry Braider, one of the miners, testified:

"Any practical miner could go in there (the mine) and by tapping it with his hand or pick could tell whether the roof above was loose. When you have a sound roof it sounds hard, and it sounds hollow when it is loose. It is easy to tell a loose rock from a hard rock."

D. P. Singleton testified that he went to Grabner's (appellant's) room the morning of the injury and that the minute he saw it he knew it was in a dangerous condition; that he could tap the roof and tell whether it was loose; that an experienced miner could have easily discovered the same thing; that sometimes the miner will follow the boss into these places without thinking about it; sometimes the boss coaches the miner into dangerous places. He testified that he came very near going into the place where appellant was hurt that morning following the boss, but that he noticed the condition and would not go in.

Gomer Gower, the superintendent, further testified that a practical miner could determine with ease whether or not there is loose rock in his working place; that it is impossible to prevent a "squeeze," because, where the coal is taken out approximately 200 feet under the ground, it would be impossible to get timbers of sufficient strength to hold the weight when the ground began to settle. He further testified:

"We have made no provision to . inspect a mine that has laid idle for 4 days, because the miner is supposed to take care of himself in his place."

Appellant testified that the "squeeze" came while he was not working; that he did not know exactly what the "squeeze" was, as he had not seen many of them. He testified that he did not know that rock would fall out of the roof of a mine occasionally after it had a "squeeze."

[1, 2] Under the facts in this case, we do not think the question as to whether appellant was an independent coal or mining contractor is involved, nor is the question involved as to contributory negligence by reason of appellant not having properly propped the roof of the mine where he was working. Each of the parties pleaded that, at the time of the injury, appellant and the agent of appellee were in the mine negotiating with reference to the employment of appellant by appellee to clear out the débris caused by the "squeeze." There is no contention in the testimony that the "squeeze" was in any way caused by the way appellant had propped the mine, or that same was not originally properly propped. The principle of law to be applied to the facts in this case is that of owner of property and an invitee. Appellant, having gone into the mine with appellee's mine boss for the purpose of carrying on negotiations looking toward his employment to remove the débris caused by the "squeeze," became an invitee. El Paso Printing Co. v. Glick (Tex. Civ. App.) 246 S. W. 1076, affirmed by Supreme Court (Tex. Com. App.) 263 S. W. 260. Appellee was under obligations to appellant as an invitee to use ordinary care for his protection and safety while he remained on said premises in said capacity, and was under obligations to use ordinary care in inspecting the premises to discover the dangerous condition, if any, and prevent appellant as an invitee being injured. Geo. W. Armstrong Co. v. Adair, 112 Tex. 439, 247 S. W. 848; Bustillos v. Southwestern Portland Cement Co. (Tex. Com. App.) 211 S. W. 929; El Paso Printing Co. v. Glick (Tex. Com. App.) 263 S. W. 260. The question as to whether appellee used ordinary care to prevent appellant from being hurt, and whether its failure so to do was the proximate cause of the injury, and whether appellant was guilty of contributory negligence, were all questions of fact which should have been submitted to the jury. Wilkerson v. Brin (Tex. Civ. App.) 268 S. W.

1010; M., K. & T. Ry. Co. v. Riddle, 277 S. W. 164, recently decided by this court, not yet [officially] reported.

The trial court committed error in instructing a verdict for appellee, for which the cause is reversed and remanded.